COMMONWEALTH vs. ALFRED JOHN ALESSIO
(and five companion cases[1]).

Middlesex. October 2, 1978. — January 11, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Search and Seizure. Probable Cause. Constitutional Law,* Probable
cause.

A finding of probable cause for the issuance of a search warrant for
illegal gaming apparatus was adequately supported by an affidavit
of a police officer setting forth underlying circumstances from
which the magistrate could conclude that an informant, who was
unknown to the magistrate and to the police, had reliably deter-
mined, prior to his tip to police, that illegal bets were being regis-
tered at the premises ultimately to be searched, in which there was
a telephone reached by the informant to place "gaming wagers"
[80]; the affidavit adequately disclosed underlying circumstances
from which the magistrate could conclude that the undisclosed
informant was credible or his information reliable where the affi-
ant stated, with respect to premises not specified in the warrant and
as to which the informant also gave police a tip, facts showing
extensive police corroboration of gaming activities therein, and
showing partial police corroboration of the tip concerning gaming
activities in the premises to be searched, which was under police
observation. [80-82]

COMPLAINTS received and sworn to in the First District
Court of Eastern Middlesex, four on October 6, 1976, and
two on October 8, 1976.

A motion to suppress evidence was heard and allowed
in the Superior Court by *Hallisey,* J.

The Commonwealth's application for an interlocutory
appeal was allowed by *Kaplan,* J., and the appeal was
reported by him.

---

[1] One companion case was against Alfred John Alessio and four
were against Alexander MacLeod.

*James W. Sahakian,* Assistant District Attorney, for the Commonwealth.

*Frank P. Marchetti* for the defendants.

WILKINS, J. The defendants filed motions to suppress evidence obtained by the State police acting pursuant to a search warrant issued by a judge of the Superior Court. The defendants, each of whom was charged with violations of the gaming laws, contended in support of their motions that the affidavit on which the search warrant was issued was insufficient to permit a finding of probable cause under the "two-pronged" test of *Aguilar* v. *Texas,* 378 U.S. 108, 114 (1964). A judge of the Superior Court allowed the motions to suppress. A single justice of this court granted the Commonwealth's applications for interlocutory appeals under G. L. c. 278, § 28E. We conclude that the affidavit was sufficient to permit a finding of probable cause under the *Aguilar* test and reverse the orders allowing the defendants' motions to suppress.[2]

The affidavit on which the search warrant was issued was signed by a State police officer. The affidavit disclosed that an unknown informant, who declined to reveal his name, had told another officer of the State police of two gambling operations. One was conducted at a spa in Somerville; the other was conducted at the location to which a particular telephone number was listed. The police determined that the telephone number was listed to certain premises in Medford, for whose search the warrant in this case was issued.

The information in the affidavit concerning the Somerville spa was substantial. The informant had given detailed facts concerning the gambling operations conducted at the spa and the person engaged in them. The officer who signed the affidavit conducted an extensive investi-

---

[2] In view of this conclusion, we need not decide whether the defendant MacLeod had standing to challenge the warrant to search premises owned by the defendant Alessio in which MacLeod was only a day visitor.

gation of activities at the spa. He entered the spa on four occasions and observed conduct which was consistent with the operation of illegal betting on the premises. A separate search warrant was issued for the search of the spa, and the propriety of the issuance of that warrant is not before us.

The informant's disclosure of information concerning gambling operations at the Medford address and the officer's corroboration of that information were far less extensive. The affidavit stated that the unknown informant had said that a specific telephone number was being used for accepting gambling wagers by a person known to him as Richard Alessio and by another man unknown to him. Alessio had told the informant that the telephone number was unpublished and listed in the name of a relative to avoid detection. The informant said that "he had placed gaming wagers at this telephone number within one (1) week" of his disclosure to the State police. The officer checked the telephone number and found that it was unpublished and listed to "John Alessi" at the location in Medford.

On September 14, 1976, the officer observed the Medford premises, and from approximately 11 A.M. to 12 M. he used a pay telephone about twenty-five times to dial the number listed to the premises. The line was always busy. At 12:10 P.M. the telephone was answered on the first ring by a male who said "Hi." The officer said, "John," the male said "Yeah," and the officer hung up. On September 15, 1976, the officer again observed the premises, and dialed the number ten times between 11:30 A.M. and 11:50 A.M., always receiving a busy signal. Five minutes later the telephone was answered on the "first half-ring" by a man who said "Hi," and the officer hung up. On September 22, 1976, the officer followed the same procedure, commencing at 11:20 A.M. He dialed the number approximately fifteen times during forty-five minutes and received a busy signal each time. At 12:10 P.M., the telephone was answered on the first ring by a man, and

a conversation took place which is set forth in the margin.[3] On September 30, 1976, starting at shortly before noon, the officer made similar attempts to call the number. Six times the number was busy. On three occasions the telephone was answered on the first ring by a man who said "Hi." There was no significant conversation.

A search warrant may lawfully be issued by a magistrate only if there is a showing of probable cause for its issuance. When an unknown informant volunteers hearsay allegations on which the police seek a warrant, the affidavit in support of the application must inform the magistrate "of [1] some of the underlying circumstances from which the informant concluded that [criminal activity took place where he claimed it did] and [2] some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.' " *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964). If the informant's tip does not satisfy each aspect of the *Aguilar* test, the tip along with other allegations in the affidavit nevertheless may support a finding of probable cause. *Commonwealth* v. *Vynorius*, 369 Mass. 17, 20-21 (1975). *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969). We turn then to a consideration whether the affidavit in this case adequately supported the finding of probable cause.

---

[3] UNKNOWN MALE: "Hi."
OFFICER: "Hey, is this John?"
UNKNOWN MALE: "Who's this?"
OFFICER: "Dave, Dave Phillips from Somerville."
UNKNOWN MALE: "What do you want?"
OFFICER: "I just wanted to check is Gal Friday scratched at Suffolk."
UNKNOWN MALE: "I don't know you who gave you this number."
OFFICER: "A mutual friend he said not to use his name but it would be OK to call you."
UNKNOWN MALE: "I don't talk to people I don't know have him call me and you can call him."
OFFICER: "OK."
At this point the officer hung up without any further conversation.
    The affidavit stated that "Gal Friday" was a horse scheduled to run that day at a local race track.

1. The first "prong" of the *Aguilar* test is met. The affidavit sets forth underlying circumstances from which the magistrate could conclude that the informant had reliably determined that illegal bets were being registered at the premises which ultimately were searched. The informant had stated that "he had placed gaming wagers at [the specified] telephone number within one (1) week" prior to providing the police with his tip. The affidavit further disclosed that the telephone bearing that number was installed at the premises for whose search the warrant was issued. This information established the likelihood that illegal activity was occurring on the premises. See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975); *Commonwealth* v. *Hall*, 366 Mass. 790, 797-798 (1975).

This case is to be distinguished from those in which the affidavit failed to disclose a sufficient underlying factual basis for the informant's allegations that criminal activity had occurred. See, e.g., *Commonwealth* v. *Stevens*, 362 Mass. 24, 28-29 (1972); *Spinelli* v. *United States*, 393 U.S. 410, 416 (1969). In the *Spinelli* opinion, the Court concluded that the informer's tip did not "contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation" at certain telephone numbers. *Id.* The Court there noted that a statement of an informant that he had placed a bet with the defendant could be an adequate basis for determining the reliability of the tip. *Id.*

2. A closer question exists as to whether the affidavit adequately discloses underlying circumstances from which a magistrate could conclude that the undisclosed informant was credible or his information reliable, the second "prong" of the *Aguilar* test.

The judge below limited his consideration to matters stated in the affidavit concerning the premises to be searched. Therefore, he disregarded information concerning the Somerville spa. We think that the corroboration of the tip concerning illegal activities at the Somerville

spa bears on the credibility of the informant and the reliability of the information he disclosed. The demonstrated reliability of an informant on matters other than the case before the court is, of course, relevant to the determination of the reliability of the informant. See *Commonwealth* v. *Boswell*, 374 Mass. 263, 268-269 (1978); *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975). The disclosure of the tip concerning the Somerville spa and its extensive corroboration appeared in the same affidavit as did the disclosure of the tip concerning the premises to be searched, but this is no reason for discounting it. See *United States* v. *Harris*, 403 U.S. 573, 581-582 (1971) (plurality opinion).

We believe that the informant's reliability was supported further by the police observations of the Medford premises, considered in light of common knowledge concerning the methods of operation of entrepreneurs engaged in illegal gambling activities. See *Commonwealth* v. *Moran*, 353 Mass. 166, 170 (1967). Although, standing alone, those observations would not necessarily have been sufficient to establish the informant's reliability, such observations may properly be considered in conjunction with other indications of reliability appearing in the affidavit. *Commonwealth* v. *Pope*, 354 Mass. 625, 628 (1968). *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969). In addition to establishing that the telephone number was listed to the premises to be searched, the police placed the premises under observation at or before noon on four days during the local racing season. An officer made repeated telephone calls to the telephone listed for the premises. The line was almost always busy. When it was not busy, the call was answered almost immediately. The officer had one substantial conversation with a person who answered the telephone. The statements by the person who answered were somewhat suspicious, although admittedly inconclusive by themselves.

The defendants urge us to take account of the fact that the identity of the informant was unknown not only to

the magistrate, but also to the police. Because of this anonymity, we do not attach substantial weight to the fact that the informant incriminated himself. See generally *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975); *United States* v. *Harris*, 403 U.S. 573, 583 (1971) (plurality opinion). However, the anonymity of the informant is but one factor to be weighed in determining his reliability, and we have previously accepted determinations that such an informant is reliable. See *Commonwealth* v. *Boswell*, 374 Mass. 263, 268-269 (1978). See also *Commonwealth* v. *Anderson*, 366 Mass. 394, 398-399 (1974).

We believe that the magistrate was warranted in finding the informant to be reliable. We are concerned here with a determination of probable cause and not with guilt beyond a reasonable doubt. Good policy should allow "a certain leeway or leniency in the after-the-fact review of the sufficiency of applications for warrants." *Commonwealth* v. *Corradino*, 368 Mass. 411, 416 (1975). See *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965). Reasonable inferences and common knowledge are appropriate considerations in determining probable cause. *Commonwealth* v. *Moran*, 353 Mass. 166, 170-171 (1967). *Spinelli* v. *United States*, 393 U.S. 410, 419 (1969). The affidavit in this case, considering its allegations as a whole (*Commonwealth* v. *Stewart*, 358 Mass. 747, 751 [1971]), showed extensive police corroboration of the reliability of the informant as to a simultaneous tip concerning other premises, and it further showed partial corroboration by the police of the reliability of the informant as to his tip concerning the premises to be searched.

3. The orders of the trial judge allowing the defendants' motions to suppress are reversed, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*