COMMONWEALTH vs. JOYLENE LABELLE.

Worcester. October 15, 1982. — January 19, 1983.

Present: KASS, ROSE, & SMITH, JJ.

*Probable Cause. Search and Seizure,* Warrant. *Constitutional Law,*
Search and seizure. *Receiving Stolen Property.*

A police officer's affidavit describing the circumstances in which a "citi-
zen" informant had observed a certain automobile and the "nervous
and evasive" behavior of its occupants; setting forth the fact that cer-
tain coins found in the roadway that the automobile had traversed,
before any other vehicle passed, had been identified as recently stolen
from a nearby home; and relating the affiant's personal knowledge
that an occupant of the vehicle had a prior record of breaking and
entering was sufficient to establish probable cause for the issuance of a
warrant to search the automobile. [178-180]
A warrant for the search of an automobile, which described with particu-
larity two canvas bags as items to be seized, was not made invalid by
the addition of concededly invalid further directions for the seizure of
"other items stolen in recent house breaks in the town of Oakham,"
where no search or seizure was made pursuant to the invalid clause.
[180-182]
A police officer searching an automobile pursuant to a warrant, which
described with particularity two canvas bags to be seized, properly
opened, searched, and seized a large paper bag, which plausibly might
have contained one or both of the canvas bags described in the war-
rant, and which in fact contained items stolen in a recent housebreak.
[182-183]
At the trial of a complaint under G. L. c. 266, § 60, there was sufficient
evidence, including testimony as to the defendant's statements and
conduct, to enable the jury to conclude that items seized from an
automobile driven by the defendant were stolen, and that the defend-
ant knew them to be stolen. [183-184]

COMPLAINT received and sworn to in the Western
Worcester Division of the District Court Department on
October 22, 1980.

On appeal to the jury session of the Central District Court of Worcester, a motion to suppress evidence was heard by *Greenberg*, J., and the case was tried before *Kelleher*, J.

*Brownlow M. Speer* for the defendant.

*Harry D. Quick, III*, Legal Assistant to the District Attorney (*Lynn Morrill Turcotte*, Assistant District Attorney, with him) for the Commonwealth.

ROSE, J. The defendant was found guilty by a six-member jury in a District Court on a complaint framed under G. L. c. 266, § 60.[1] She was sentenced to a term of one year in a house of correction, three months to be served and the balance suspended. The trial judge granted her motion for a stay of execution of sentence pending appeal. On appeal she claims that a motion to suppress evidence was erroneously denied because there was no probable cause to issue the search warrant under which the evidence in question was found, that the warrant itself was invalid because it contained a general clause, and that even if the warrant were partially valid, the search exceeded the scope of the valid clauses. She further claims that a motion for a required finding of not guilty was erroneously denied.

We briefly summarize the evidence, leaving a more detailed presentation for the subsequent discussion of the issues raised.[2] Shortly before noon on October 21, 1980, Calvin Stewart of Coldbrook Road in the town of Oakham pulled into his driveway and saw an unfamiliar automobile parked near his cellar door. A man (Gary Brow) standing next to the automobile came over to him and asked for directions to get to a junkyard on Coldbrook Road. After getting directions, Brow asked a woman (the defendant) in the driver's seat to back up the automobile; he then got into the automobile and it turned northward on Coldbrook

---

[1] General Laws c. 266, § 60, reads in relevant part, "Whoever buys, receives or aids in the concealment of stolen or embezzled property, knowing it to have been stolen or embezzled . . . shall, . . . if the value of such property exceeds one hundred dollars, be punished . . . ."

[2] The sequence of events described here is based on the testimony at the suppression hearing and at trial.

Road. Stewart, who had once been a part-time police officer, wrote down the license plate number. Approximately fifteen or twenty minutes later Stewart observed the same automobile pass by in the opposite direction. His suspicion aroused, Stewart notified the Oakham police and gave a description of the automobile and its occupants. Shortly before 1 P.M., about an hour after Stewart's encounter with Brow and the defendant, the Oakham police received a report that coins had been found beside Coldbrook Road.

Two hours later, Doris Lonergan, who lived in a northerly direction from the Stewart house, reported to the Oakham police that her home had been broken into and some items taken. The Oakham chief of police arrived at the Lonergan residence shortly afterwards and inspected the premises. He then stopped at the Stewart residence to talk with Stewart about the latter's observations. At approximately the same time, about fifteen miles away in Spencer, State police Officer Richard Belanger stopped an automobile matching the description Stewart had given to the police. Belanger asked the driver for her license and vehicle registration and advised both occupants of their Miranda rights. Soon afterwards the Oakham chief of police arrived on the scene with Stewart. Stewart identified the two occupants of the stopped automobile as the same two persons, Brow and the defendant, who had stopped in his driveway earlier that day. After Brow refused to give Belanger permission to open the trunk, Belanger left with the Oakham chief of police and Stewart to obtain a search warrant while other police officers remained with the automobile. Brow and the defendant did not attempt to leave, although they were not told they could not leave and were not placed under arrest at that time. About two hours later, Belanger returned to the automobile with a search warrant, opened its trunk, and found a brown paper bag with the top closed and rolled down halfway. He opened the bag, saw items he believed to have been stolen from the Lonergans, and arrested the defendant and Brow.

Brow pleaded guilty to the charge of receiving stolen property, knowing it to be stolen. He testified at the defendant's trial that on the afternoon of October 21 the defendant drove him to a location on Coldbrook Road. There he received the stolen items from two acquaintances while the defendant waited in the automobile. At the trial Doris Lonergan identified most of the items in the paper bag taken from the automobile trunk as items taken from her home, but she also testified that many of the items taken had not been recovered.

1. *The Affidavit.*

Belanger submitted the following affidavit in support of his application for a search warrant[3]:

> "On 10/21/80 at 11:55 *a.m.*, Mr. Calvin Stewart of Coldbrook Rd. in Oakham observed a 1965 Chevrolet Impala MA. Reg. 436 FWK parked in [the] driveway of his home. Mr. Stewart described the occupants as one male and one female. The occupants appeared to be nervous and evasive in giving an account of their presence there. The vehicle left in a northerly direction on Coldbrook Rd. At approximately 12:30 P.M., 10/20/80,[4] Mr. Stewart observed the aforementioned vehicle travelling south on Coldbrook Rd. A short time later, 3/4 hour (no other car passed in that 3/4 hour time span) local children found assorted coins in the roadway (Coldbrook Rd.). This finding was reported to the Oakham police at 12:50 *p.m.*, 10/21/80. At 2:50 *p.m.* on 10/21/80, Mrs. Roger Lonergan of Coldbrook Rd. in Oakham reported a break at her home. The aforementioned coins were identified by Mrs. Lonergan as those taken from her house.
>
> "As a result of the information received, I observed a 1965 Chevrolet Impala Mass. Reg. 436 FWK and

---

[3] Punctuation and spelling have been corrected.

[4] The defendant acknowledges that this error in the date was insignificant. (The date should have been "10/21/80.")

stopped same on Mechanic St. in Spencer. Mr. Stewart came to the scene and identified the vehicle and occupants as those at his house at 11:55 *a.m.*, 10/21/80. The occupants were identified as Gary Brow of Central St. in Brookfield and Joylene M. LaBelle of 32 Chestnut St., Spencer. This officer has personal knowledge that subject Brow has had involvement in breaking and entering and receiving stolen property in the past."[5]

In determining whether the affidavit presents probable cause for the issuance of a search warrant, we must regard it in a "commonsense and realistic fashion." *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965). *Commonwealth* v. *Taglieri*, 378 Mass. 196, 198, cert. denied, 444 U.S. 937 (1979). Although the magistrate who considers the affidavit may not consider facts not contained in the affidavit, *Commonwealth* v. *Martin*, 6 Mass. App. Ct. 624, 626 (1978), he may apply common knowledge and draw "a common sense conclusion from the information set forth in the affidavit." *Commonwealth* v. *Taglieri, supra* at 198, 199. Such common knowledge would include awareness of the general features of the area, such as the approximate size and rural character of Oakham. Given this awareness and the description in the affidavit of Stewart's observations, in combination with the location of the coins found, and the Lonergan break-in, it required no leap of logic or imagination to conclude that the behavior of Brow and the defendant suggested criminal activity.[6] This behavior occurred during the short time period when it appeared the Lonergans' house had been broken into. It is not necessary for the person whose property is searched to have been

[5] The rest of the affidavit described as subject to seizure the items described in the first two clauses of the search warrant. See below.

[6] The defendant does not contend that Stewart's observations were unreliable or should be tested by the rules governing informants as stated in, e.g., *Aguilar* v. *Texas*, 378 U.S. 108 (1964).

directly observed in the commission of a crime for there to be probable cause to issue a search warrant. See *Commonwealth* v. *Moran,* 353 Mass. 166, 168-171 (1967); *Commonwealth* v. *Corradino,* 368 Mass. 411, 413-417 (1975); *Commonwealth* v. *Vynorius,* 369 Mass. 17, 22-26 (1975); *Commonwealth* v. *Martin, supra* at 629-630. Belanger's statement in the affidavit that he had personal knowledge of Brow's prior record of breaking and entering, and receiving stolen property properly could be relied upon by the magistrate. *United States* v. *Harris,* 403 U.S. 573, 583 (1971). *Commonwealth* v. *Anderson,* 362 Mass. 74, 76-77 (1972).

2. *The Search Warrant.*

The search warrant contained three clauses describing the items to be seized:[7]

> "1. One canvas bag approx. 12″ x 18″ x 8″ in size with the name J. Lonergan, Old Turnpike Rd., Oakham 01068 (color green).
> 2. One canvas bag approx. 12″ x 18″ x 8″ in size with the name J. Lonergan, Old Turnpike Rd., Oakham 01068 (color brown).
> 3. Other items stolen in recent house breaks in the town of Oakham."

The Commonwealth does not contest the defendant's claim, which we view as sound, that the third clause was invalid for its failure particularly to describe the things to be seized.[8] See *Commonwealth* v. *Taylor,* 383 Mass. 272, 275 (1981). The question presented for our decision is whether the third clause invalidates the whole warrant, regardless of how the search was carried out.

In deciding this issue it is not necessary to accept the broader doctrine urged upon us by the Commonwealth that only those items seized pursuant to invalid portions of a

---

[7] Punctuation and spelling have been corrected.

[8] The third clause was not contained in the affidavit.

partially valid warrant need be suppressed, and the items seized pursuant to the valid portions of the warrant need not be suppressed. *Aday* v. *Superior Court,* 55 Cal. 2d 789, 797 (1961).[9] Here there was no search made pursuant to the invalid clause. It is necessary only to decide whether the warrant was made invalid by the general clause when no search or seizure was made pursuant to that clause.

The purposes of the exclusionary rule, which requires that illegally obtained materials be excluded as evidence, are to deter improper police behavior, to keep the courts from becoming a party to improper police behavior, and to avoid undermining public confidence in the system of justice by permitting the government to profit from any infringement on fundamental rights. See generally 1 LaFave, Search and Seizure § 1.1(f) (1978). It is difficult to see how any of these purposes would be served by excluding seized materials when the police have not engaged in improper conduct. See *Commonwealth* v. *Fielding,* 371 Mass. 97, 114 (1976).

Rules and procedures have been developed which generally do not require exclusion of evidence legally seized in searches which also involved some illegal seizures. Thus, if a search exceeds the scope of a valid warrant resulting in seizure of items not described in the warrant and not subject to seizure under the "plain view" doctrine, those items may be excluded while other items seized within the scope of the same warrant and are not subject to exclusion. For a discussion of this procedure, see *In re Search Warrant Dated July 4, 1977, for Premises at 2125 S St., Northwest, Wash. D.C.,* 667 F.2d 117, 130-133 (D.C. Cir. 1981), cert. denied sub nom. *Founding Church of Scientology* v. *United States,* 456 U.S. 926 (1982). For an application of this

---

[9] Several jurisdictions have adopted this rule. See generally 2 LaFave, Search and Seizure § 4.6(f) (1978 & Supp. 1982), and *United States* v. *Christine,* 687 F.2d 749 (3d Cir. 1982). Massachusetts has yet to decide this issue directly, but see *Commonwealth* v. *Dunigan,* 384 Mass. 1, 6 (1981), where First Amendment rights were involved.

procedure, see *Commonwealth* v. *Accaputo*, 380 Mass. 435, 448-450 (1980). Even if there has occurred improper police behavior with respect to the seizure of some items, that does not taint the total result so as to require exclusion of all the seized items.[10] So here it would be anomalous to invalidate the entire warrant because of a defective clause when the police acted as though the defective clause did not exist.[11] We conclude, therefore, that the warrant here was not defective due to an overbroad clause when the police made a directed search under those portions of the warrant describing specific property reported as stolen.

3. *The Search.*

The defendant contends that the search exceeded the scope of the first two clauses. According to the testimony at the suppression hearing, when Belanger obtained the search warrant he returned to the automobile occupied by the defendant and Brow and opened the trunk with the keys given to him.[12] Inside the trunk he saw a large brown paper bag, the exact dimensions of which were not established, which was rolled down at the top. He opened the bag and found many of the items which had been stolen from the Lonergan residence. The defendant does not argue that Belanger did not have reasonable ground for believing that the items he saw in the paper bag belonged to the Lonergans. Belanger seized the paper bag with its contents and ceased his search.

---

[10] Rules of similar effect which limit the exclusion of evidence to evidence directly linked to improper police behavior include the "attenuated connection" rule and the "independent source" rule. See 3 LaFave, *supra* § 11.4(a). See, e.g., *Commonwealth* v. *Glavin*, 354 Mass. 69, 72 (1968); *Commonwealth* v. *Fielding*, 371 Mass. at 113-115; *Commonwealth* v. *Watkins*, 375 Mass. 472, 483 n.9 (1978); *Commonwealth* v. *Norris*, 6 Mass. App. Ct. 761, 768 (1978). The *Aday* case, discussed above, extends this approach.

[11] In *United States* v. *Jacob*, 657 F.2d 49, 50-52 (4th Cir. 1981), cert. denied, 455 U.S. 942 (1982), the court did not invalidate a warrant due to a "hypertechnical" error when the police did not act pursuant to the error.

[12] At the suppression hearing and at the trial, Belanger could not remember which occupant gave him the keys.

Before the search, the canvas bags described in the first two clauses of the warrant were described to Belanger as collapsible.[13] He had reason to suspect, therefore, that one or both of the canvas bags were secreted inside the paper bag. The defendant does not argue to the contrary. When a search pursuant to a warrant is conducted for a specific item, any container which might plausibly contain that item may also be opened and searched. See *Commonwealth* v. *Cefalo*, 381 Mass. 319, 330-331 (1980); *United States* v. *Gentry*, 642 F.2d 385, 387 (10th Cir. 1981). When that container is opened and stolen items not mentioned in the warrant come into plain view, they too may be seized. *Coolidge* v. *New Hampshire*, 403 U.S. 443, 465-472 (1971). *Commonwealth* v. *Haefeli*, 361 Mass. 271, 281 (1972). *Commonwealth* v. *Cefalo*, *supra* at 330-331. There is no requirement that stolen items seized under the plain view doctrine be discovered inadvertently. *Coolidge* v. *New Hampshire*, *supra* at 471-472. *Commonwealth* v. *Accaputo*, 380 Mass. at 447, 449. We conclude that the search and seizure were lawfully conducted within the scope of the first two clauses of the search warrant.[14]

4. *Sufficiency of the Evidence.*

"In reviewing the denial of a motion for a required finding of not guilty in a criminal case, we consider whether the evidence, when viewed in the light most favorable to the Commonwealth . . ., and with permissible inferences therefrom, was sufficient with respect to each essential element of the offense to have 'satisfied a rational trier of fact of each such element beyond a reasonable doubt.'" *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 239 (1982), and cases cited.

---

[13] In searching for an item particularly described in a valid clause of a warrant, the officers executing the warrant may rely upon unstated additional information in their possession to locate the item on the premises. See *Commonwealth* v. *Postoian*, 361 Mass. 869, 870 (1972). See also *United States* v. *Harvey*, 540 F.2d 1345, 1353-1354 (8th Cir. 1976).

[14] It is not necessary to consider the Commonwealth's alternative argument that the search was justified as a warrantless search of the vehicle.

The Commonwealth introduced sufficient evidence so that the jury could have found beyond a reasonable doubt that the items found in the trunk of the automobile were stolen. There also was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant knew the items were stolen. State police Officer Cellucci, who remained with the automobile occupied by the defendant and Brow while Belanger sought a search warrant, testified that Brow said to him, "Well, you might as well open the trunk; what I have back there is going to get me in trouble anyways." Celucci also testified that the defendant then appeared "upset," and he added, "She said, 'What are you doing, don't say that,' and I don't remember the exact wording, but it was to that effect." Furthermore, when combined with other direct and circumstantial evidence, e.g., that she was driving the automobile, this testimony was sufficient for the jury reasonably to conclude that the defendant acted with Brow in receiving items which she knew had been stolen. See *Commonwealth* v. *Settipane*, 5 Mass. App. Ct. 648, 651-653 (1977); *Commonwealth* v. *Johnson*, 7 Mass. App. Ct. 191, 193-194 (1979). Contrast *Commonwealth* v. *Chinn*, 6 Mass. App. Ct. 714, 717 (1978).

*Judgment affirmed.*