COMMONWEALTH *vs.* JORGE MELENDEZ
(and two companion cases[1]).

Worcester. November 7, 1989. - March 19, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Probable Cause. Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Affidavit, Probable cause.

A District Court judge correctly allowed a criminal defendant's motion to suppress evidence seized pursuant to a search warrant where the affidavit in support of the application for the warrant failed to show that the unnamed informant, on whose information the affidavit was based, was credible or that his information was reliable, and where there was no other information in the affidavit to corroborate the informant's veracity. [55-59] GREANEY, J., dissenting.

COMPLAINTS received and sworn to in the Worcester Division of the District Court Department on May 8, 1987.

On appeal to the jury session, a pretrial motion to suppress evidence was heard by *Paul V. Mullaney*, J.

The Commonwealth's application for an interlocutory appeal was allowed by *Wilkins*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Sean J. Gallagher*, Assistant District Attorney, for the Commonwealth.

*Andrew L. Mandell* for Jorge Melendez.

*Charles P. Ball*, for Nereida Cruz, was present but did not argue.

LIACOS, C.J. A judge in the District Court allowed the defendant's motion to suppress the fruits of a search conducted by Worcester police on May 7, 1987. The Commonwealth's

[1]Against Nereida Cruz.

application to pursue an interlocutory appeal was allowed. See Mass. R. Crim. P. 15 (a) (2), 378 Mass. 883 (1979). We agree with the motion judge that the affidavit in support of the search warrant in this case failed to establish probable cause.

On May 6, 1987, Detective Daniel F. O'Connor of the Worcester police department's vice squad applied for a warrant to search apartment 3 at 19 Great Brook Valley Avenue in Worcester. The following are relevant portions of the affidavit in support of the application for the search warrant:

"I, Daniel F. O'Connor being duly sworn, depose and say:

1. I am currently a Detective in the Worcester Police Vice Squad, a position of which I have continuously held for the past four years. Presently I am assigned to the District Attorney's Drug Task Force located at 332 Main Street, Worcester, Massachusetts. During my career I have been involved in several hundred of narcotic investigations including heroin and cocaine investigations.

"2. I have information based upon a confidential and reliable informant. For the purpose of the affidavit I will hereinafter refer to this informant as CRI-1. CRI-1 is a person who has given your affiant information in the past which has proved to be accurate and true. CRI-1 has given information that has led to the arrest of persons in the city of Worcester for violations of the controlled substance act. Two such arrests were that of Rafaela Ortiz and Augustine Ortiz on January 16, 1987. Rafael Oritiz [sic] and Augustine Ortiz were arrested for possession of heroin with intent to distribute. These cases are currently pending in Worcester District Court. For the purpose of this affidavit this informant will hereinafter be referred to as CI-1. Your affiant has met with CI-1 numerous times in the last week and most recently this date. CI-1 advised that he/she has purchased cocaine from 19 Great Brook Valley Ave., apt. #3 Worcester, Massachusetts. CI-1 also stated that he/she and other certain cocaine users would go to this apartment and purchase cocaine. CI-1 further stated that he/she would purchase this cocaine from a spanish male named Jorge Melendez and also a spanish

female by the name of Nereida Cruz. CI-1 stated that he/
she has purchased cocaine from 19 Great Brook Valley Ave.
second floor Apt. #3 within the last 24 hours. The white pow-
der that CI-1 purchased from Jorge was injected into CI-1's
arm was in fact cocaine. CI-1 further stated that Jorge and
Nereida are major distributors of cocaine from this
apartment.

"On July 2, 1986 Jorge Melendez was arrested by Troop-
ers Jeffrey Stone and Ronald Ford for possession of cocaine
with intent to distribute. Melendez later plead guilty to pos-
session of cocaine in Worcester Superior Court and placed on
two years probation.

"On this date a check with the Great Brook Valley hous-
ing authority as to the residents of 19 Great Brook Valley
Ave., Apt. #3 revealed that this apartment is leased to Ner-
ida [*sic*] Cruz."

A magistrate issued a warrant to search the apartment,
and on May 7, 1987, the police seized, among other things,
plastic bags and paper packets containing white powder be-
lieved to be cocaine. The judge granted the defendant's mo-
tion to suppress the evidence seized, ruling that the affidavit
failed to meet the requirements of *Commonwealth* v. *Upton*,
394 Mass. 363 (1985).

"Under art. 14 of the Massachusetts Declaration of
Rights, a magistrate, before issuing a search warrant, must
determine that probable cause exists." *Commonwealth* v.
*Rojas*, 403 Mass. 483, 485 (1988), citing *Commonwealth* v.
*Upton*, *supra*. "In *Upton*, we held that, under art. 14 . . . the
test for determining probable cause in cases involving un-
named informants incorporates the principles developed
under *Spinelli* v. *United States*, 393 U.S. 410 (1969), and
*Aguilar* v. *Texas*, 378 U.S. 108 (1964)" (footnote omitted).
*Commonwealth* v. *Saleh*, 396 Mass. 406, 409 (1985).
"Under the *Aguilar-Spinelli* standard, if an affidavit is based
on information from an unknown informant, the magistrate
must 'be informed of (1) some of the underlying circum-
stances from which the informant concluded that the contra-
band was where he claimed it was (the basis of knowledge

test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was "credible" or his information "reliable" (the veracity test). *Aguilar* v. *Texas, supra* at 114. If the informant's tip does not satisfy each aspect of the *Aguilar* test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. *Spinelli* v. *United States, supra* at 415.' " *Commonwealth* v. *Upton, supra* at 374-375.

The affidavit in this case failed to satisfy the veracity test.[2] The Commonwealth, in arguing that the informant was reliable, relies principally upon certain statements in the affidavit which indicate that he (or she) purchased and used cocaine. The Commonwealth asserts that these remarks constituted statements against penal interest and thus buttressed the informant's veracity. We disagree.

In order for a statement to be considered by the magistrate to be a statement against penal interest, there must be information in the affidavit which tends to show that the informant would have had a reasonable fear of prosecution at the time that he made the statement. See 1 W.R. LaFave, Search and Seizure § 3.3(c), at 645-646 (2d ed. 1987); *People* v. *Johnson*, 66 N.Y.2d 398 (1985); Comment, The Supreme Court, 1970 Term, 85 Harv. L. Rev. 53, 60 (1971); Note, Probable Cause and the First-Time Informer, 43 U. Colo. L. Rev. 357, 367 (1972). "Courts . . . should not utilize the admission against-penal-interest concept in a blunderbuss fashion, but instead should assess in a more careful fashion, preferably upon a full disclosure by the police of all relevant circumstances, what the significance of that admission is in the context of the particular case." 1 W.R. LaFave, *supra*.[3]

_____

[2]The defendant concedes that the information in the affidavit satisfied the basis of knowledge test.

[3]We do not mean to suggest that the standard for determining probable cause should be as strict as that needed for the admission of evidence in a trial. The question is not whether the evidence is admissible at trial, but whether it "meets preliminary requirements sufficient to merit its consideration by any tribunal. One of these prerequisites . . . is that the admission of a crime must be, in fact, against the declarant's interest. Admissions, when found to be against interest, are considered credible because it is

See *People* v. *Johnson, supra* ("Such admissions are not guarantees of truthfulness and they should be accepted only after careful consideration of all the relevant circumstances of the case indicates that there exists a basis for finding reliability"). Statements may be more credible if there is a threat of police retaliation for giving false information. See 1 W.R. LaFave, *supra* at 649-650.

For example, in *Commonwealth* v. *Parapar*, 404 Mass. 319 (1989), immediately after being arrested for cocaine trafficking and after the police had made three undercover cocaine purchases, the informant told the police where he had obtained the cocaine. In these circumstances, one could infer that the informant had an actual fear of being prosecuted. Similarly, in *Commonwealth* v. *Vynorius*, 369 Mass. 17 (1975), the affiant police officer caught the informant red-handed, his pockets stuffed with marihuana. After the informant confessed his drug purchase, he turned over the contraband to the police officer and gave him the information that the officer used as the basis for the affidavit.

In contrast, the statement in this case did not indicate any circumstances which would cause the informant to have a reasonable fear of prosecution. The statement was unaccompanied by any physical evidence. Indeed, it is likely that the uncorroborated confession, in and of itself, would have been insufficient to prove guilt. *Commonwealth* v. *Leonard*, 401 Mass. 470, 472 (1988). The likelihood of prosecution was rather remote. One might infer in a case like this that the informant was a "protected stool pigeon" whose inaccuracies or indiscretions are tolerated on a continuing basis in exchange for information. See 1 W.R. LaFave, *supra* at 647. See also Comment, The Supreme Court, 1970 Term, 85 Harv. L. Rev., *supra* at 60. In such a case, he would have little to fear from giving false information. See 1 W.R.

---

assumed that persons do not make statements damaging to themselves unless satisfied they are true. Admissions need not always be against the declarant's interest, however; and, if they are not, the basis for believing them is destroyed." (Footnotes omitted). Note, Probable Cause and the First-Time Informer, 43 U. Colo. L. Rev. 357, 367 (1972).

LaFave, *supra* at 647.[4] See Note, Probable Cause and the First-Time Informer, 43 U. Colo. L. Rev., *supra* at 367.[5]

The Commonwealth additionally argues that the fact that the defendant had once pleaded guilty to cocaine possession corroborated the informant's veracity. We disagree. "A defendant's criminal history may be factored into a probable cause determination as corroboration of an informant's tip, but only if the history is sufficiently recent and similar to the crime charged to demonstrate that 'the defendant was not averse' to committing such a crime." *Commonwealth v. Allen*, 406 Mass. 575, 579 (1990), quoting *Commonwealth v. Germain*, 396 Mass. 413, 418 n.7 (1985). In *Germain*, the defendant had a record of crimes similar to that of armed robbery, for which he was charged, including theft, possession of a .32 caliber gun, and possession of burglarious tools. We stated that this criminal history showed "conduct from which the inference may be drawn that the defendant was

---

[4]For these reasons, according to LaFave, the disclosure of an informant's identity calls for "particular caution" and should carry "little weight," even though the identity of the informant is known to the police. 1 W.R. LaFave, *supra* at 647.

At any rate, a magistrate could not reasonably infer that the affiant knew the actual identity of the informant. The fact that the affiant met with the informant does not imply that he knew his name or address or that he could readily reach the informant had the information proved to be false. Without any indication whether the affiant actually knew the informant's identity, it is impossible to conclude that the informant had any reasonable fear of prosecution. See *Commonwealth v. Allen*, 406 Mass. 575 (1990).

[5]The Commonwealth's reliance on *Commonwealth v. Nowells*, 390 Mass. 621, 626 (1983), is misplaced. *Nowells* held that it is necessary *at the very least*, that the statement provide a reliable basis for concluding that the informant committed a crime. It did *not* hold that any statement which remotely opens the declarant to criminal prosecution is automatically to be considered a statement against penal interest.

In addition, *Commonwealth v. Norris*, 6 Mass. App. Ct. 761 (1978), like *Vynorius* and *Parapar*, involved an informant who gave information following his arrest. *Commonwealth v. Kiley*, 11 Mass. App. Ct. 939 (1981), is a rescript which does not even recite the facts of the affidavit. *Commonwealth v. Atchue*, 393 Mass. 343, 347 n.3 (1984), dealt with a named and identified informant. But see *Commonwealth v. Benlien*, 27 Mass. App. Ct. 834, 837-838 n.4 (1989).

not averse" to committing the crime for which he was under investigation. *Id.* at 418 n.7. In contrast, in this case, the sole guilty plea for a possession offense did not show conduct which demonstrated the defendant's proclivity to engage in drug dealing and it should not have been given weight in a probable cause determination.[6]

The fact that the informant gave information on one occasion in the past which led to the arrest of two individuals is insufficient to satisfy the veracity test. *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988). The Commonwealth does not argue, and thus we need not consider, whether the fact that the arrestees' cases were pending at the time of the affidavit furnished an indicium of reliability not present in *Rojas*. Even assuming that there is more here than in *Rojas*, we do not think that the affidavit sufficiently established the informant's veracity. Standing alone, the aforementioned information did not furnish an independent basis for deeming the informant reliable. As we have determined that the other aspects of the affidavit did not comport with the requirements of *Upton*, we conclude that the motion judge was correct in ruling that the affidavit failed to establish probable cause.

The orders allowing the defendants' motions to suppress in this case and in the companion case are affirmed.

*So ordered.*

GREANEY, J. (dissenting). The court's consideration of the affidavit in this case is flawed in three fundamental respects. First, the court leaves to the end of its opinion, and then brushes aside, the single most important piece of material pertaining to the informant's veracity — the fact that the informant had furnished information in the past to Detective

---

[6]The Commonwealth admits that the information in the affidavit regarding the lessee of the apartment cannot be considered to corroborate the informant's veracity. See *Commonwealth* v. *Bottari*, 395 Mass. 777, 784 (1985).

O'Connor which led to the arrests and prosecutions in the Worcester District Court of two named individuals for serious violations of the controlled substance laws. Following this omission, the court isolates two pieces of corroborative information — the defendant's recent conviction of possession of cocaine and the informant's admission to the recent purchase and use of cocaine — and deals with them as though they were the only facts relevant to a determination of the informant's veracity. Finally, having dissected the affidavit in this fashion, the court evades study of the document as an organic whole and shuns application to its contents of the well-established principles which admonish us to consider the information in the affidavit in an ordinary, commonsense manner without hypertechnical analysis, *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965); to give weight to the magistrate's determination that probable cause exists, *Commonwealth* v. *Upton*, 394 Mass. 363, 377 (1985) (*Upton II*); *Commonwealth* v. *Atchue*, 393 Mass. 343, 346 (1984); and to resolve marginal cases in favor of finding probable cause, *United States* v. *Ventresca, supra* at 108-109; *Commonwealth* v. *Stewart*, 358 Mass. 747, 750 (1971).

Proper analysis of the affidavit should begin with Detective O'Connor's statement that the informant "has given information that has led to the arrest of persons in the city of Worcester for violations of the controlled substance act. Two such arrests were that of Rafaela Ortiz and Augustine Ortiz on January 16, 1987. Rafael Oritiz [*sic*] and Augustine Ortiz were arrested for possession of heroin with intent to distribute. These cases are currently pending in Worcester District Court." This information is relegated to the last full substantive paragraph of the court's opinion and then promptly disregarded in a conclusory statement or two unsupported by the citation of any authority.[1]

[1] I do not agree with the court's assertion that the Commonwealth has not argued the importance of these facts. The Commonwealth's brief relies upon "the informant's prior tips," together with the other information in the affidavit, as "converg[ing] to satisfy the veracity test." Although the Commonwealth does not clearly distinguish this information from that

The information quoted indicates that the informant has provided the police with past tips which they have been able to convert into prosecutions. A key in determining whether an informant's past record independently establishes his veracity is the degree of success with which the authorities have pursued individuals named by him in past tips. While a "naked assertion" in an affidavit that an informant has given past tips which have led to arrests is not sufficient by itself to establish veracity, see *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1989), it is quite clear that proof of information leading to a past conviction is not necessary to a finding of veracity.[2] The magistrate who issued the warrant in this case

which we found deficient in *Commonwealth* v. *Rojas*, 403 Mass. 483 (1988), it does rely upon the arrests and prosecutions as important to establishing probable cause.

Further, we have a clear obligation to examine an issue which concerns the validity of a criminal prosecution. As the United States Supreme Court has pointed out in the analogous area of confessions of error by the prosecution: "[O]ur judicial obligations compel us to examine independently [issues on appeal]. . . . The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as to that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties." (Citations omitted.) *Young* v. *United States*, 315 U.S. 257, 258-259 (1941). See *Sibron* v. *New York*, 392 U.S. 40, 58-59 (1968). This directive is especially true when the highest appellate court in a State has before it an affidavit supporting an application for a search warrant, the consideration of which involves only a question of law. Ignoring the issue produces an opinion that leaves the law on a vital topic of criminal law in an unsatisfactory state, calling into doubt the validity of many other affidavits..

[2]See, e.g., *United States* v. *Fleming*, 566 F.2d 623, 625 (8th Cir. 1977) (rejecting defendant's argument that veracity requires showing of information leading to successful prosecutions or convictions); 1 W.R. LaFave, Search and Seizure § 3.3(b), at 629 (2d ed. 1987) (stating that it "clearly is not the case" that veracity prong requires showing of past tip leading to at least one conviction). Our decisions also have adhered to this view, holding that veracity exists, based on the informant's past record and other indicia of reliability, despite the absence of a past conviction. See, e.g., *Commonwealth* v. *Valdez*, 402 Mass. 65 (1988) (past tip led to one arrest on outstanding warrant); *Commonwealth* v. *Saleh*, 396 Mass. 406 (1985) (past tips led to three arrests and Federal indictments); *Commonwealth* v. *Hason*, 387 Mass. 169 (1982) (past tips provided "accurate information to

could reasonably have inferred that the past tips given by the informant had led to more than mere arrests — the arrests of the individuals named in the affidavit (Rafaela Ortiz and Augustine Ortiz) had resulted, at the time the affidavit was prepared, in determinations that factual and legal bases existed for the issuance of a complaint against each Ortiz for a narcotics offense.[3]

The inferences that follow from this are strong. This informant, a drug purchaser and user, associates with persons in Worcester who deal in drugs. He knows enough about these dealers and their illegal activities to furnish grounds for arresting and prosecuting two of them. The fact that prosecutions resulted from these two arrests, therefore, provides a strong indication of reliability which was not present in the *Rojas* case. In particular, the subsequent prosecutions support a conclusion that the past tip contained reliable infor-

the police on three previous occasions"); *Commonwealth* v. *Stewart*, 358 Mass. 747 (1971) (past tip led to discovery of evidence).

[3]The fact that the Ortizes' cases had been pending for four months (at the time the affidavit was prepared) reveals that criminal complaints must have issued against them. See G. L. c. 263, § 4 (1988 ed.) (no person may be held to answer for alleged crime in the District Court unless a complaint has issued); Mass. R. Crim. P. 3 (a), 378 Mass. 847 (1979) (same). The existence of these complaints would indicate to the clerk magistrate examining this affidavit at least the following: If each Ortiz was arrested on an arrest warrant, a judicial officer would have found probable cause before any arrest warrant issued, thereby authenticating the informant's tips. See G. L. c. 218, § 33 (1988 ed.). If arrest warrants were not used, a clerk magistrate would have concluded that a factual and legal basis existed to issue complaints for possession of heroin with intent to distribute. Each Ortiz then would have been arraigned promptly, see G. L. c. 276, § 38 (1988 ed.) (if arrested without a warrant, arrestee must be brought before a judge as soon as possible after arrest); District Court Standards of Judicial Practice, The Complaint Procedure, Standard 2:00 & Commentary (1975) (arraignment in District Court routinely occurs no later than next business day after arrest), and separately examined by a judge who would make at least a preliminary determination of probable cause. See G. L. c. 276, § 22; K.B. Smith, Criminal Practice and Procedure §§ 625, 626 (2d ed. 1983); District Court Standards of Judicial Practice, The Complaint Procedure, Standard 2:00, *supra*. A clerk-magistrate in the District Court issued this warrant. This magistrate would have had special experience with respect to the District Court's procedure in the issuance of arrest warrants and complaints.

mation. "[A] determination of the informant's credibility could properly be made where it is revealed not simply that arrests were made, but rather that the prior information led to 'arrests and prosecutions.'" 1 W.R. LaFave, Search and Seizure *supra* at § 3.3(b), at 634. Our facts resemble those in *Commonwealth* v. *Saleh*, 396 Mass. 406 (1985), where this court found that the informant's veracity had been established solely on the basis of his past tips, which had resulted in three arrests and Federal indictments.

The information discussed above may well be enough by itself to establish veracity. Any doubt on the matter, however, is dispelled by the two pieces of corroboration contained in the affidavit.

The first is the fact that the defendant recently has been convicted of possession of cocaine. There can be no question that a prior conviction of the person incriminated by an informant's tip can provide corroboration of the informant's veracity if the prior conviction is recent and involves a crime similar to the one alleged in the tip. See *Commonwealth* v. *Allen*, 406 Mass. 575, 579 (1990); *Commonwealth* v. *Germain*, 396 Mass. 413, 418 n.7 (1985). See also *Commonwealth* v. *Labelle*, 15 Mass. App. Ct. 175, 180 (1983) (prior record of defendant for similar offense is relevant corroboration). The prior conviction in the instant case falls into this category. The affidavit discloses that the defendant Jorge Melendez was arrested on July 2, 1986 —less than one year before the date the affidavit was prepared (May 6, 1987) — and that he entered a guilty plea at a later date. Compare *Commonwealth* v. *Allen*, *supra* (four year old conviction too remote). Furthermore, the charge in Melendez's prior case was possession of cocaine with intent to distribute, which is precisely the charge alleged in the informant's tip. The statement regarding the prior conviction on a cocaine charge corroborates the informant's tip, and thus provides relevant material on the issue of veracity. See *Commonwealth* v. *Upton*, 390 Mass. 562, 572 n.8 (1983) (*Upton I*) (noting that an affidavit which failed the veracity prong would have been

"somewhat strengthened" had it included reference to the defendant's prior conviction on a similar charge).

The court, however, states that the conviction did not show "conduct which demonstrated the defendant's proclivity to engage in drug dealing and it should not have been given weight in a probable cause determination." *Ante* at 59. I do not know quite what this statement means. A recent drug conviction certainly indicates a defendant's willingness to commit the same crime again. Only the naive would think that every drug dealer will "go straight" after he has been once caught and convicted. If the statement suggests, as I think it does, that a defendant's prior criminal record is not relevant to a probable cause inquiry unless the record consists of more than one conviction, then it is both fundamentally wrong,[4] and devoid of support in our case law.[5]

---

[4]Professor LaFave, upon whom the court heavily relies, argues that a single prior conviction which meets the tests of recency and similarity is relevant evidence of an informant's veracity. See 1 W.R. LaFave, Search and Seizure § 3.2(d), at 582, 585-586 (2d ed. 1987).

[5]The court's conclusion, *ante* at 58-59, that a "sole guilty plea" does not show a "conduct from which the inference may be drawn that the defendant was not averse" to committing the crime currently charged is based solely on a footnote in the *Germain* case. See *Commonwealth* v. *Germain*, 396 Mass. 413, 418 n.7 (1985). However, the *Germain* court in no way suggested that any minimum number of convictions must be present before a magistrate may rely on a past criminal record as a sign of reliability. Furthermore, the court's analysis completely ignores the two requirements we *did* set forth in *Germain* — that the past criminal record must be recent and similar to the crime currently alleged. *Germain, supra. Commonwealth* v. *Allen*, 406 Mass. 575, 579 (1990). A proper application of the *Germain* factors reveals that the defendant's past record in this case is at least as relevant to the probable cause inquiry as was that of the defendant in *Germain*. The *Germain* defendant did have multiple past convictions, but all except one of the convictions upon which the court relied in finding probable cause (possession of a .32 caliber handgun) stemmed from a single event. Furthermore, those convictions were approximately one and one-half years old, and for substantially dissimilar crimes (none of the past convictions included personal assault element at issue in the current charges of armed robbery while masked and stealing by confining or putting in fear). By contrast, the defendant's past record in this case is less than one year old, and for a substantially identical crime.

No set length should be adopted as an inflexible minimum when a defendant's prior criminal record is being considered in a probable cause examination. The proper focus should be on the record's intrinsic probative value. See 1 W.R. LaFave, Search and Seizure § 3.2(d), at 581 (2d ed. 1987). As Professor LaFave notes: "where the past criminal conduct bears a sufficient similarity either because of the nature of the crime or the manner of its execution to the act in question, so as to give rise to a reasonable inference that the same person committed both acts, this fact can be considered along with the other available information in a determination of probable cause." *Id.* at 582, quoting *Commonwealth* v. *Gullett*, 459 Pa. 431, 441 (1974).

I urge close adherence to the probative value standard, as manifested by the requirements we enunciated in *Germain* (prior conviction must be recent and for a similar offense), and which were cited with approval in Professor LaFave's treatise. See *Commonwealth* v. *Germain, supra* at 418 n.7; 1 W.R. LaFave, *supra* at 582 nn. 112 & 113. Under this standard, a single prior conviction could carry probative value, and thus be relevant to the probable cause inquiry, if it is recent and for a substantially similar offense. I would avoid interjecting into the analysis any suggestion of a rigid mechanical rule which attempts to provide a shorthand solution to the intrinsic probative value inquiry. The defendant Melendez's prior conviction clearly meets the probative value standard and should not be rejected as part of the probable cause analysis in this case.

The second piece of corroborative material in the affidavit is the informant's statement that he had purchased cocaine from Melendez within the past twenty-four hours and injected it into his arm. The court refuses to consider the statement as one against the informant's penal interest for two reasons: the statement was not made in circumstances which would indicate that the informant had a reasonable fear of prosecution, and "the uncorroborated confession, in and of itself, would have been insufficient to prove guilt." *Ante* 57. The latter point is simply wrong. In a probable cause analy-

sis, we are not concerned with the standard that governs evidence at a trial, or the adequacy of a fact to prove guilt beyond a reasonable doubt. We are concerned only with probable cause, a considerably less demanding standard of proof. It is unfair to the Commonwealth, and confuses the law, to import standards applicable in other areas into this aspect of the case.

In the context of search warrant applications, we have said that statements against penal interest may be considered relevant to establishing veracity if they "provide a ground for concluding [that the informant] committed a crime." *Commonwealth* v. *Nowells*, 390 Mass. 621, 626 (1983). See *Commonwealth* v. *Parapar*, 404 Mass. 319, 322 (1989); *Commonwealth* v. *Alessio*, 377 Mass. 76, 81 (1979). See also 1 W.R. LaFave, *supra* at § 3.3 (c), at 644 n.140 (noting that courts regularly hold that a statement against penal interest is a factor to be considered on showing of reliability, and citing to several such cases).

Here, the informant admitted to having purchased cocaine from both defendants on several occasions, the most recent purchase having occurred within the twenty-four hours preceding Detective O'Connor's preparation of the affidavit. This statement implicates the informant in the crime of possession of a class B controlled substance. See G. L. c. 94C, § 32A (1988 ed.).

The informant's statement in this case compares quite favorably with statements which have been deemed relevant evidence of veracity in other search warrant affidavits.[6] The statement is much stronger than other statements, which required a conclusion about the informant's criminal culpabil-

---

[6]See, e.g., *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975) (admission to two purchases of drugs); *Commonwealth* v. *Kiley*, 11 Mass. App. Ct. 939, 939 (1981) (admission to one purchase of drugs); *United States* v. *Reivich*, 793 F.2d 957, 959 (8th Cir. 1986) (admission of past and current drug dealings); *United States* v. *Deggendorf*, 626 F.2d 47, 51 (8th Cir.), cert. denied, 449 U.S. 986 (1980) (admission of cocaine use within past eight months).

ity to be reached by implication, but which were still found to support an informant's veracity.[7]

I am cognizant of the danger inherent in applying a statement against penal interest made by an informant in a "blunderbuss fashion." 1 W.R. LaFave, *supra* at § 3.3(c), at 645. Detective O'Connor may have promised the informant a "break of some sort" in exchange for the information, and it may not be entirely satisfactory to explain the situation by saying, as some courts do, that a promise of special treatment "does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *United States* v. *Harris*, 403 U.S. 573, 583-584 (1971). 1 W.R. LaFave, *supra* at § 3.3(c), at 649-650, 657. However, although the informant might not be in immediate danger of prosecution, his admission still carries an indication of reliability because of his fear that providing the police with misleading information will not bode well for him in the future. See *Commonwealth* v. *Norris*, 6 Mass. App. Ct. 761, 765 (1978); 1 W.R. LaFave, *supra*. The fact remains that, if the given information turns out to be false, the police have leverage over the

[7]The statement made in this case is a direct admission, and thus more incriminating than a statement which merely gives rise to an *inference* of criminal conduct, but nonetheless has been deemed against the declarant's penal interest. See, e.g., *Commonwealth* v. *Atchue*, 393 Mass. 343, 347 n.3 (1984) (reasoning that informant's admission of "first hand knowledge" of location of stolen property "gives rise to the inference that the informant's statements could be viewed as against his penal interest"); *Commonwealth* v. *Norris*, 6 Mass. App. Ct. 761, 766 (1978) (given informant's earlier past arrest for sale of stolen airline tickets, subsequent statement that person who informant knows has other stolen tickets gives rise to the inference that informant admitted joint participation in the latter crime); *United States* v. *Gavic*, 520 F.2d 1346, 1351 & n.8 (8th Cir. 1975) (statement by occupant of premises that a controlled substance was present creates inference of reliability because it "at least implicated" informant in crime of constructive possession).

The informant's statement also differs substantively from the one made in *Commonwealth* v. *Nowells*, 390 Mass. 621 (1983). In *Nowells*, the informant admitted going to a particular apartment "to get (turned on) with cocaine." *Id*. at 623. We held that the statement did not indicate that the informant committed a crime because it revealed only the informant's purpose in visiting the apartment and not incriminating activities committed by the informant in the apartment. *Id*. at 626.

informant and could punish him in many ways including a disclosure of his identity.

The fact that Detective O'Connor knew the informant's identity is also critical.[8] Due to his lack of anonymity, the informant likely would have perceived his remarks as risky and inculpatory. See 1 W.R. LaFave, *supra* at § 3.3(c), at 647 (noting that a "critical fact" regarding the weight to be attached to statements against penal interest is whether the informant's identity is known to police). Cf. *Commonwealth v. Alessio*, 377 Mass. 76, 81-82 (1979) (reasoning that police ignorance of informant's identity undermines value of statement against penal interest). I would conclude that the informant's admission to purchasing and using cocaine from the defendants, because he is an informant known to the officer making the affidavit, is further relevant corroboration of his veracity.

Considered in the aggregate, the material in the affidavit describes an informant, known to Detective O'Connor, who had a good record of past performance, and whose information is corroborated by Melendez's recent conviction of a similar drug charge and the informant's statement against his penal interest. The affidavit provides an adequate basis to find the informant reliable, a conclusion fortified by comparison of the information in this case with that in cases in which

---

[8]The court states, *ante* at 58 n.4, that "a magistrate could not reasonably infer that the affiant knew the actual identity of the informant." I disagree. Detective O'Connor states that he "has met with [the informant] numerous times in the last week and most recently this date." This statement clearly supports an inference that O'Connor knew the identity of the informant.

this court has found that the veracity prong has not been satisfied.[9] I would so hold.

---

[9]In the majority of those cases, the informant's identity was unknown to the police, and the informant had neither provided any tips in the past nor made a statement against his penal interest. See, e.g., *Commonwealth* v. *Spence*, 403 Mass. 179 (1988); *Commonwealth* v. *Borges*, 395 Mass. 788 (1985); *Upton I, supra*; *Upton II, supra*. In these cases, the Commonwealth attempted to establish veracity solely on the basis of police corroboration of the informant's tip. We deemed that corroboration inadequate in each case. In *Borges*, the police corroborated only the informant's description of the defendant's physical appearance and clothing. In the *Upton* cases, police corroborated the presence of a motor home at the location predicted by the informant, who had stated that stolen goods were located inside the home. However, the police were unable to confirm the presence of those goods in the home. Finally, in *Spence*, the police observed two men, one of whom fit a physical and clothing description provided by the informant, disembarking from a particular flight that the informant had predicted. The informant had stated that the man he described would be carrying a large amount of heroin in his crotch, which would be evidenced by a visible bulge. However, it was the described man's companion, the defendant, who was carrying the heroin. Thus, we concluded that "[t]he fact that the defendant was travelling with an individual whom the informant was able to describe does not indicate anything about the reliability of the informant's tip concerning the defendant." *Spence, supra* at 181. This case differs from these three cases in at least two critical aspects. First, unlike in the three cases discussed above, the affidavit in the instant case provided evidence of the informant's veracity independent of any police corroboration. Second, a significant piece of police corroboration, concerning the past criminal record of the defendant, was presented in the instant affidavit.

My conclusion on this point is also buttressed by the fact that the *Borges* and *Upton* cases, despite holding that veracity had not been demonstrated, were perceived by at least some members of those courts as close decisions. See *Commonwealth* v. *Borges, supra* at 797 (Hennessey, C.J., concurring) ("This case is close enough to the line so that I bow to the court's wisdom, but not without doubt on my part"); *Upton II, supra* at 377 (Wilkins, J.) ("We grant that the [*Aguilar-Spinelli*] question [in this case] is a close one").