COMMONWEALTH *vs*. JAMES E. BENLIEN.

No. 88-P-1003.

Berkshire.  September 12, 1989. — October 18, 1989.

Present: ARMSTRONG, KAPLAN, & DREBEN, JJ.

*Search and Seizure*, Forcible entry by police, Warrant, Probable cause. *Constitutional Law*, Search and seizure.

A "no knock" warrant and search for drugs in an apartment were justified by the situation described in a police officer's affidavit and by the scene actually encountered by the police officers executing the warrant, in circumstances where the physical layout of the apartment permitted a lookout for the police, and where making an announcement would have facilitated escape of the occupants or destruction of evidence. [836-837]

Probable cause for the issuance of a search warrant was demonstrated in an affidavit in which corrobation of the reliability of the unnamed informant was provided by his having made a controlled purchase of drugs, in cooperation with police, at the apartment to be searched. [837-839]

INDICTMENTS found and returned in the Superior Court Department on May 11, 1987.

A pretrial motion to suppress evidence was heard by *Lawrence B. Urbano*, J., and the cases were heard by *Charles R. Alberti*, J.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Robert J. Carnes*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. A "no knock" search warrant permitted a search for any controlled substances and related materials in premises at 59 Weller Avenue, Pittsfield, occupied by James Benlien. Search pursuant to the warrant uncovered quantities of cocaine and marihuana and characteristic paraphernalia, and, upon trial, jury-waived, of the ensuing indictments, Benlien was found guilty of possession of cocaine with intent to distribute and

possession of marihuana. The judgments of conviction are attacked on this appeal for claimed errors in the denial of a pretrial motion to suppress the evidence mentioned.

1. The defendant contends that probable cause was not shown to justify the "no knock" feature of the warrant and of the search. Detective Owen Boyington, the Pittsfield police officer who made the affidavit supporting the warrant, had substantial information about the likely conditions of the forthcoming search. Accordingly he was well advised to ask the magistrate for a no knock authorization if the police intended to proceed in that way. This is the prophylactic proposition of *Commonwealth* v. *Scalise*, 387 Mass. 413, 420 (1982): "We conclude it to be a sound principle that the decision whether to dispense with the requirement of announcement should be left to judicial officers, whenever police have sufficient information at the time of application for a warrant to justify such a request." See also *Commonwealth* v. *Manni*, 398 Mass. 741, 742-743 (1986).

The following information relevant to the no knock appeared from Boyington's affidavit. It combined observations by the affiant and by an informer (unnamed). No. 59 Weller Avenue is a three-family apartment house. Benlien's apartment is on the first level. It consists of a living room, two bedrooms, kitchen, and bathroom. One wishing to enter the apartment from the front, i.e., from Weller Avenue, mounts a porch and immediately faces the entrance door of the apartment which opens directly into the living room. This door is made of heavy wood with an upper panel of glass. It is always kept locked and is secured with a large dead bolt. The rear door of the apartment also is kept locked. All three apartments of the building have access to the cellar. A person in the living room has a view of anyone coming on the porch, and also a view beyond to Weller Avenue. The affiant noted that Pittsfield has a small police force and the officers are generally known by residents, if not by name, then by sight. He added that cocaine is kept in small units for retail trade, as was envisioned here, and can be quickly destroyed.

The judge who ruled on the motion to suppress recognized that the fact drugs can readily be made to disappear does not itself entitle the police to proceed without knock and announcement to search premises suspected of the illegal activity. But, as the judge wrote in his memorandum, whereas "the Commonwealth has not adopted any blanket exception [to knock and announcement] based on a category of crime, such as drug-related crimes, . . . this does not mean that ease of destruction of small packets of drugs cannot be considered as a factor in determining whether a no knock warrant should issue." We look to an additional factor or factors that in reason should tip the balance and justify particular "exceptions." Thus in *Commonwealth* v. *Scalise*, 387 Mass. at 418, the court, adopting a passage in *Commonwealth* v. *Cundriff*, 382 Mass. 137, 147 n.15 (1980), cert. denied, 451 U.S. 973 (1981), noted that

> "[o]ther exceptions to the knock and announce rule have been recognized where the person inside the dwelling to be entered has knowledge of the officers' purpose and presence, see *Ker* v. *California*, 374 U.S. 23, 47 (1963) (Brennan, J., dissenting); *Commonwealth* v. *McDougal*, 2 Mass. App. Ct. 820 (1974), and cases cited, and where making an announcement would facilitate a suspect's escape or the destruction of evidence, see *Miller* v. *United States*, 357 U.S. 301, 309 (1958) (dictum) (citing *People* v. *Maddox*, 46 Cal. 2d 301 [1956]); *Ker* v. *California*, *supra* at 47 (Brennan, J., dissenting); *United States* v. *Cisneros*, 448 F.2d 298, 304 (9th Cir. 1971) (possibility of escape)."

Our present case falls within a combination of the stated exceptions: the setup of building and apartment permitted the suspect to maintain a virtual lookout for the appearance of police, cf. *Commonwealth* v. *Houghtlin*, 16 Mass. App. Ct. 691, 692-693 (1983); the physical obstacle to entry into the apartment, if knock and announcement were required, might well allow time for destruction of evidence ahead of effective police intervention, cf. *United States* v. *Jefferson*, 714 F.2d

689, 693-694 (7th Cir. 1983); *United States* v. *Couser*, 732 F.2d 1207, 1208 (4th Cir. 1984); and escape in the interval of time appeared possible, if not by means of the back door, then by way of the cellar staircase to upper floors.

Where a no knock provision of a warrant is justified by the situation anticipated in the submission to the magistrate, the carrying out of the procedure may yet be illegal if what is actually encountered turns out to be materially less exigent than the forecast. See *Commonwealth* v. *Scalise*, 387 Mass. at 421; 2 LaFave, Search and Seizure § 4.8(g), at 289 (2d ed. 1987). Here the actual scene and event matched Boyington's earlier description and reinforced support for the no knock. As the two officers in the lead, Boyington and Detective Terrence Donnelly, reached the front door, they saw through the glass a number of persons (in fact, eleven, including the defendant Benlien) milling about in the living room and evidently heading for escape toward the rear of the apartment.[1] Donnelly attempted to open or break down the wooden door by four blows of a sledgehammer. It would not yield. So Donnelly broke the glass, and Boyington, then Donnelly, dived through the space into the living room. It is unnecessary to catalogue the cocaine and marihuana and the scale and other items recovered, which betokened a retail business in small amounts of drugs.[2]

2. The judge dealt summarily with the defendant's further contention that probable cause had not been shown for the issuance of a warrant (with or without a no knock feature). The affiant Boyington stated that in the last two weeks[3] the informer told him that Benlien was selling cocaine from his apartment and that he, the informer, had bought cocaine from, and used it with, Benlien.[4] Within the past ten days the affiant

---

[1] In fact the back door was guarded on the outside by police.

[2] One of the items found was an instrument enabling the user to hear police broadcasts.

To help avoid undue damage by a search of the apartment and contents, the defendant told the police where some of the drugs were located.

[3] The affidavit was made, the warrant issued, and the search occurred on April 1, 1987.

[4] Here was a declaration against penal interest which — especially as the informer was known to the police, whether or not by name — may be held

Commonwealth *v.* Benlien.

and Officer Donnelly had superintended a "controlled buy" by this informer from Benlien: Boyington and Donnelly met the informer at an agreed place; Boyington searched the informer and found him clean of narcotics and money, went with the informer in the informer's car to 59 Weller Avenue, handed the informer an indeterminate amount of money, and saw the informer enter and then leave Benlien's apartment and return to the car. The informer handed Boyington a packet of cocaine and said Benlien had sold it to him in the apartment. He then drove Boyington to the original meeting place with Donnelly following; Boyington entered Donnelly's car, and the informer departed. The affiant added that within the past two days the informer stated that he had seen cocaine and marihuana and a "three beam" scale in Benlien's apartment and that he believed the two drugs were now in the apartment.[5] The affidavit continued with the informer's description of exterior and interior features of the apartment.

The affidavit so far as it bore on the "reliability" of the informer — one of the two elements of the *Aguilar-Spinelli* canon[6] — might be thought less than solid, were it not for the account of the controlled buy.[7] This repaired any weakness in the showing of reliability and lent strength generally to the submission to the magistrate. Professor LaFave writes:

> "Yet another situation in which the corroboration will suffice to show veracity is that in which the informant

---

in some measure to prove his "reliability." See *Commonwealth* v. *Nowells*, 390 Mass. 621, 626 (1983), and authorities cited; *Commonwealth* v. *Parapar*, 404 Mass. 319, 323 (1988); *Commonwealth* v. *Kiley*, 11 Mass. App. Ct. 939 (1981).

[5] The postmaster confirmed to Boyington that Benlien received his mail at the apartment.

[6] *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969). And see *Commonwealth* v. *Upton*, 394 Mass. 363 (1985).

[7] That the controlled buy took place on a date (unspecified) as much as ten days before the date of the affidavit may be explained by the need not to pinpoint the encounter and thus impair the anonymity of the informer. See *State* v. *Cavegn*, 356 N.W.2d 671, 674 (Minn. 1984).

has not been working independently, but rather has cooperated closely with the police, as is true when the informant makes a controlled purchase of narcotics. That is, where there is 'physical proximity and active participation in the informant's intrigue' by the police, so that it is not 'independent police work' which corroborates, but rather 'the police corroboration is a co-ordinate and intrinsic part of the informer's operation,' [quoting from *State* v. *Gamage*, 340 A.2d 1, 16 (Me. 1975)] the risk of falsehood has been sufficiently diminished. As explained in *State* v. *Barrett* [132 Vt. 369, 374 (1974)]: 'The purpose of the search of the informer and his being escorted to the place of purchase was to eliminate both as much as possible of the hearsay aspects of the search warrant request and to reduce the reliance on "veracity" to a minimum. The magistrate had enough facts to support a finding of probable cause, and had them in a form which rendered extended evaluation of the informant's credibility unnecessary.'" 1 LaFave, *supra* § 3.3(f), at 686-687 (footnotes omitted).

Controlled buys appear as grounds supporting the issuance of search warrants in numerous cases, among these, the following cited by LaFave: *Watt* v. *State*, 412 N.E.2d 90, 96-97 (Ind. App. 1980); *State* v. *Cavegn*, 356 N.W.2d 671, 673 (Minn. 1984); *State* v. *Sowden*, 48 N.C. App. 570, 572 (1980); *State* v. *Barrett*, 132 Vt. 369, 374 (1974). Cf. *United States* v. *Rodgers*, 732 F.2d 625, 630-631 (8th Cir. 1984); *People* v. *Exline*, 98 Ill. 2d 150, 154-155 (1983); *State* v. *Arnold*, 214 Neb. 769, 773 (1983); *State* v. *Hayward*, 18 Or. App. 128, 131 (1974); *State* v. *Carlile*, 290 Or. 161, 167 (1980).

*Judgments affirmed.*