### Commonwealth vs. Pedro Polanco Jimenez.

Worcester. September 5, 2002. - December 12, 2002.

Present: Marshall, C.J., Greaney, Spina, Sosman, & Cordy, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant, Forcible entry by police, Probable cause, Affidavit, Exigent circumstances. *Probable Cause. Practice, Criminal,* Findings by judge. *Controlled Substances.*

A Superior Court judge erred in denying a criminal defendant's motion to suppress evidence where, although the affidavit in support of the application for a search warrant was sufficient to establish probable cause that the controlled substances sought by police would have been destroyed if police were required to knock and announce before executing the warrant, there was no basis for the police to believe at the time they arrived at the threshold of the apartment to be searched that the occupants might have notice of their presence and might therefore be destroying evidence; consequently, a "no-knock" entry was no longer warranted and was therefore unlawful, and, absent a reason set forth by the Commonwealth why exclusion of any illegally seized evidence should not be the remedy in this case, such evidence was to be excluded. [215-222] Sosman, J., dissenting.

Indictments found and returned in the Superior Court Department on December 11, 1997.

A pretrial motion to suppress evidence was heard by *James P. Donohue,* J., and the cases were tried before *Nonnie S. Burnes,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Harry D. Quick, III,* Assistant District Attorney, for the Commonwealth.

*Eric S. Brandt,* Committee for Public Counsel Services, for the defendant.

Cordy, J. The defendant was convicted of trafficking in cocaine and heroin in amounts exceeding 200 grams, and of possessing controlled substances with intent to distribute in a school zone. G. L. c. 94C, §§ 32E (*b*) (4), (*c*) (4), and 32J.

Prior to trial, he moved to suppress drugs and drug paraphernalia seized from an apartment pursuant to a search warrant containing a provision permitting the police to enter and search the apartment without first knocking, announcing their presence, and stating their purpose (the "no-knock provision"). The motion was denied and the evidence introduced at his subsequent trial. On appeal, the Appeals Court reversed the motion judge's denial of the motion to suppress, holding that the affidavit on which the warrant issued was inadequate to support the no-knock provision, and that even if the no-knock provision had been properly included in the warrant, it became ineffective when the search was executed because the exigencies claimed in the affidavit no longer existed. *Commonwealth* v. *Jimenez*, 53 Mass. App. Ct. 902 (2001). We granted the Commonwealth's application for further appellate review. Because we conclude that the circumstances justifying the inclusion of the no-knock provisions were not present at the time of the search, the motion should have been allowed, and the items seized suppressed.

1. *Facts.* We glean the following facts from the affidavit submitted in support of the warrant application and from the undisputed testimony adduced at the hearing on the motion to suppress.

On November 24, 1997, a search warrant with a no-knock provision was issued on the application of Sergeant Thomas Gaffney of the Worcester police department for an apartment occupying the third floor of a residence at 5 Eastern Avenue in Worcester, and for any persons who might be found on that premises. The property sought included heroin, drug distribution paraphernalia, financial records, money, and documents pertaining to the occupancy of the apartment. The application for the search warrant was the product of several months of police work including the collection of informant information, the execution of a controlled buy, and extensive use of police surveillance. The investigation focused on two individuals nicknamed Papo (later identified as codefendant Jose Carro), and Hector (later identified as the defendant), and a white Chevrolet Lumina automobile that they apparently used to make drug deliveries.

As set forth in the affidavit of Sergeant Gaffney, Papo and

Hector operated their drug-selling business in a secretive manner. In order to purchase drugs from them, one needed to "beep" a specific telephone number. By a return telephone call, the order would be taken and directions given to a location where the drugs would be delivered. The location at which the drugs were stored and processed for distribution was never made known to the buyers, and was only discovered through police surveillance of the white Lumina after it was used to make deliveries. During the three-month period of police surveillance, Papo and Hector moved their operation from another location to the apartment at 5 Eastern Avenue.

After obtaining the search warrant, the police conducted two days of additional surveillance at 5 Eastern Avenue. At 6:23 P.M. on November 26, 1997, after observing both suspects enter the apartment, the police proceeded to execute the warrant. At the time of execution, it was dark; the suspects were not seen at the windows in the apartment; there were no apparent lookouts; the front door to the building that led to a common hallway and staircase and that normally required a key to open, gave way to "a little push"; and the officers proceeded up the stairs, breaking down the door to the apartment with a battering ram as they announced their presence.[1] Papo and the defendant were present in the apartment and were arrested.

The search proved productive. Heroin and cocaine were seized, as was equipment for their processing, packaging, and distribution. Also seized were pagers, $3,099 in cash, a handgun, and thirty-seven rounds of ammunition.

2. *Discussion.* The requirement that police "knock and announce" their presence and purpose prior to the execution of a search warrant has long been a part of our common law. *Commonwealth* v. *Macias*, 429 Mass. 698, 700 (1999). See *Commonwealth* v. *Antwine*, 417 Mass. 637, 638 (1994) (holding that, as general rule, police "must knock, announce their identity, and state their purpose"); *Commonwealth* v. *Scalise*, 387 Mass. 413, 418 n.5 (1982) (applying rule to search warrant

---

[1] The Commonwealth does not contend that the police complied with the knock and announce requirement by calling out "police" as they proceeded to batter down the door. See, e.g., *Commonwealth* v. *Gomes*, 408 Mass. 43, 44, 46 (1990).

as well as arrest warrant); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 140-147 (1980), cert. denied, 451 U.S. 973 (1981) (tracing roots of common-law knock and announce rule to Seventeenth Century England). It has also been incorporated into the protections afforded by the Fourth Amendment to the United States Constitution against unreasonable searches. *Wilson* v. *Arkansas*, 514 U.S. 927, 934 (1995) (common-law knock and announce principle is "element of the reasonableness inquiry under the Fourth Amendment"). "Among the purposes of this rule are the protection of individual privacy interests and the desire to minimize the potential for violence or property damage." *Commonwealth* v. *Macias*, *supra* at 701. See *Richards* v. *Wisconsin*, 520 U.S. 385, 393 n.5 (1997); *Commonwealth* v. *Cundriff*, *supra* at 140-141.

It is equally well established that the failure of the police to knock and announce their presence may be justified in circumstances where concern for the safety of the officers executing the warrant or fear that a substantial portion of the evidence sought might be destroyed or secreted is present.[2] See *Commonwealth* v. *Macias*, *supra* at 701; *Commonwealth* v. *Antwine*, *supra* at 639; *Commonwealth* v. *Scalise*, *supra* at 418; *Commonwealth* v. *Cundriff*, *supra* at 147 n.15. See also *Wilson* v. *Arkansas*, *supra* at 936. In order to justify suspension of the knock and announce requirement, the Commonwealth must establish that there is probable cause to believe that, in the particular circumstances of the search to be undertaken, evidence will be destroyed or officer safety put at risk if the rule is observed. *Commonwealth* v. *Macias*, *supra* at 701, 703.[3] This showing must ordinarily be made in advance of the search

---

[2]Circumstances suggesting that a suspect might escape if given notice of police presence can also be grounds for dispensing with the knock and announce requirement. *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 450 (1993). The Commonwealth does not contend on appeal that a risk of escape justified the no-knock provision in this warrant.

[3]In *Commonwealth* v. *Macias*, 429 Mass. 698, 701 (1999), we declined to depart from the probable cause standard established in our common law and adopt the reasonable suspicion standard that the United States Supreme Court concluded was required in order to justify a no-knock entry in the execution of search warrants under the Fourth Amendment to the United States Constitution. See *Richards* v. *Wisconsin*, 520 U.S. 385, 394-395 (1997). This elevated standard for the unannounced entry into a dwelling is consistent with

by affidavit submitted to the magistrate at the time of the warrant application. *Commonwealth* v. *Scalise, supra* at 420. See *Commonwealth* v. *Benlien,* 27 Mass. App. Ct. 834, 835 (1989). Such a showing can also be made after the fact, even if the warrant did not authorize a no-knock entry, if exigent circumstances arise at the threshold of the search justifying both the unannounced entry and the failure to obtain prior judicial authorization. *Commonwealth* v. *Scalise, supra* at 422 n.8. Even a no-knock entry properly authorized in advance of a search may turn out to be unlawful if the situation actually encountered by the police at the time of the warrant's execution is less exigent than what was anticipated. Consequently, the police who execute a search warrant that dispenses with the knock and announce requirement must make a "threshold reappraisal" of the actual circumstances they face before they may disregard the requirement. *Id.* at 421. *Commonwealth* v. *Macias, supra* at 704. *Commonwealth* v. *Benlien, supra* at 837. Cf. *Richards* v. *Wisconsin, supra* at 395 ("reasonableness of the officers' decision [to enter without knocking and announcing] must be evaluated as of the time they entered the [premises]").

In the present case, the Commonwealth attempted to demonstrate that the safety of the executing officers would be jeopardized and evidence might be destroyed if the officers were required to knock and announce their presence and purpose. To this end, the affidavit submitted in support of the warrant application included information that the suspects kept secret the location of the apartment where they stored their drugs, and moved it at least once during the period of police surveillance; that the apartment was located on the third floor of a residential building whose street-level door was kept locked; that it was not possible to approach the building without being seen; that heroin and cocaine could easily be disposed of by flushing them down the toilet; and that it was "common" for

the high degree of privacy that this court has historically held, in other contexts, can be expected in one's home. See, e.g., *Commonwealth* v. *Blood,* 400 Mass. 61, 68-75 (1987) (privacy interests in conversation occurring in home protected by art. 14 of the Massachusetts Declaration of Rights, beyond protection of Fourth Amendment to United States Constitution); *Commonwealth* v. *Panetti,* 406 Mass. 230, 234-235 (1989) (conversations in one's home provided greater privacy protection under art. 14).

drug dealers to have firearms and for firearms to be confiscated in the execution of search warrants of this type.

In authorizing the no-knock execution of the warrant, the magistrate did not indicate whether it was justified on the basis of officer safety, likely destruction of evidence, or both. In denying the motion to suppress, the judge identified as "unique facts" supporting the request for the no-knock provision that there would be two suspects in the apartment; that it would be difficult to enter the building; that the officers' presence would become known before they reached the third-floor apartment; and that the drugs were stored in the apartment in secret. On the basis of these findings, he concluded that the affidavit adequately demonstrated both safety concerns and concerns that contraband would be destroyed. The judge made no findings regarding whether the circumstances as they existed at the time of the search continued to justify dispensing with the knock and announce requirement, even though that issue had been specifically raised by the defendant, and much of the hearing on the motion to suppress was devoted to taking testimony on that point.

We accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law. *Commonwealth* v. *Thomas*, 429 Mass. 403, 405 (1999). We also acknowledge that affidavits in support of search warrants are to be approached with a view toward common sense, read in their entirety and with considerable latitude allowed for the drawing of inferences. *Commonwealth* v. *Smith*, 370 Mass. 335, 342-343, cert. denied, 429 U.S. 944 (1976), quoting *Commonwealth* v. *Perada*, 359 Mass. 147, 149 (1971). Here, the judge's acceptance of the affidavit's contents as establishing probable cause based on facts uniquely present in the particular circumstances can be sustained as to the likely destruction of evidence, but not as to the presence of safety concerns. More importantly, the uncontested evidence as to the conditions existing at the time of the search require that his ultimate ruling denying the motion be reversed.

First, with respect to concerns for safety, the affidavit described only general concerns present in the execution of any warrant authorizing a search for drugs. While it may be true, as

the affiant asserts, "[t]hat it is common today for drug dealers to be in possession of firearms," and that firearms are "commonly confiscated" in the execution of searches for drugs, these categorical assertions do not justify dispensing with a review of the specific circumstances present in each case.[4] To conclude that such general averments are adequate would amount to the adoption of a per se rule that safety concerns sufficient to warrant suspension of the knock and announce requirement are demonstrated merely by the fact that the search is for drugs. Such a rule was rejected by the Supreme Court in *Richards* v. *Wisconsin*, 520 U.S. 385, 390 (1997), as being inadequate to satisfy even the lower standard of reasonable suspicion that the dissent urges us to adopt and that is the minimum required by the Fourth Amendment. *Id.* at 390.

In *Richards* v. *Wisconsin, supra,* the Supreme Court reviewed a ruling of the Supreme Court of Wisconsin that the reasonableness requirement of the Fourth Amendment to the United States Constitution was satisfied by a per se exception to the knock and announce rule in the execution of search warrants in felony drug investigations. In reaching its ruling, the Wisconsin court found it reasonable to assume, based on studies, articles, and judicial opinions, that felony drug searches involve "an extremely high risk of serious if not deadly injury to the police." *Id.* at 390. Accordingly, it concluded that the police do not need to demonstrate specific information about dangerousness in order to dispense with the knock and announce requirement in such searches. *Id.* In rejecting this holding, the Supreme Court held that even though "felony drug investigations may frequently present circumstances warranting a no-knock entry,"

---

[4]While our assessment of the validity of the warrant is confined to the facts set forth in an affidavit that contained no specific factual basis for its assertion that certain events were "common," we note that during the hearing on the motion to suppress, Sergeant Gaffney (the affiant) testified that he participates in one hundred to 120 drug searches each year, and that about thirty to forty firearms are typically found in these searches. Assuming that this is the basis of Sergeant Gaffney's averment that firearms are "commonly" found in drug searches, it translates into firearms being found between twenty-five and forty per cent of the time. With regard to searches where firearms were found, there was no testimony as to whether in some or all of these instances the police had specific reasons to believe that a suspect might possess weapons before the searches were conducted.

it is "the facts and circumstances of the particular entry [which must justify] dispensing with the knock-and-announce requirement." *Id.* at 394.

While the affidavit here contained a great deal of detail about the defendant's drug operation, it contained no particular facts and circumstances suggesting that there might be weapons on the premises, that the defendant or the codefendant might carry or possess weapons, or that either had a history of weapons possession or violence. Without more, the affidavit was inadequate to establish probable cause (or even reasonable suspicion) that the officers' safety would be jeopardized by requiring them to knock and announce their presence before executing the warrant. *Commonwealth* v. *Hernandez,* 49 Mass. App. Ct. 911, 913 (2000).[5]

The circumstances presented in the affidavit with regard to the likelihood of destruction of evidence lead us to a different conclusion. While the fact that drugs can often readily be disposed of in a sink or toilet is not an adequate basis on which probable cause can be found, *Commonwealth* v. *Scalise,* 387 Mass. 413, 421 (1982), it is, of course, an obvious and important factor that the magistrate may consider along with other reasons for tipping the balance and justifying an exception to the knock and announce rule. Foremost among such other reasons is the likelihood that the occupants of the dwelling will have advance knowledge of the officers' presence and purpose. Here, the information set forth in the affidavit specifically raises this likelihood in its description of the premises as having

[5]In *Commonwealth* v. *Rodriguez,* 415 Mass. 447, 448-451 (1993), we upheld a no-knock entry on grounds of likely destruction of evidence and danger to the officers conducting the search even though there was no specific information that weapons might be present. This decision was issued before *Richards* v. *Wisconsin,* 520 U.S. 385 (1997). To the extent that the *Rodriguez* decision might be read to hold that an affidavit merely *stating that in the affiant's* experience handguns are "a danger to law enforcement agents during drug-related searches," without specific information regarding the search to be undertaken, is an adequate basis for waiver of the knock and announce rule, *id.* at 451, it is a reading that is no longer apt in light of *Richards* v. *Wisconsin, supra.* This is not to say that an affidavit specifically detailing police experience in dealing with drug dealers associated with a particular criminal enterprise or in a particular community (of which the suspects might be a part) would not suffice, but such an affidavit would need more than the general averments contained here.

(1) windows overlooking the approach that the police would need to traverse in order to gain entry to the building, and (2) a locked door located several floors below the apartment to be searched. These facts, when combined with the secretive manner of the drug operation and the movement of its locus during the period of police surveillance, would adequately support inferences drawn by the magistrate that the suspects would likely notice a police presence before the police ever got to the point where the knock and announce requirement would apply,[6] and that they would be prepared to dispose of the drug evidence within the premises as soon as they learned of that presence. Considering these inferences together, we conclude that the magistrate's approval of the no-knock provision was supported by probable cause to believe that the extra time afforded the occupants of the apartment by requiring the police to knock and announce their presence "would allow a significant additional portion of the evidence sought to be destroyed." *Commonwealth v. Macias*, 429 Mass. 698, 703 (1999). See *Commonwealth v. Scalise, supra* at 419, 421 & n.7 (furtive conduct and suspect's likely awareness of police surveillance adequate basis for no knock); *Commonwealth v. Benlien*, 27 Mass. App. Ct. 834, 836 (1989) (set up of apartment permitting lookout for police combined with physical obstacle to entry adequate basis for no knock). But see *Commonwealth v. Macias, supra* (apartment windows overlooking buzzer-operated front door insufficient to establish probable cause that extra time would result in substantial additional evidence being destroyed where large quantity of drugs stored in different parts of apartment and packaged in many smaller plastic packages would be difficult to dispose of quickly).

Having concluded that the warrant was properly issued, we turn to its execution. As noted, the police timed the execution of

---

[6]Such notice would not only give the occupants added time to dispose of the evidence, it would also negate one of the principle purposes of the knock and announce requirement, i.e., to give adequate warning to the occupants that it is the police at the door, so as to avoid surprise which might lead to unnecessary violence. See *Commonwealth v. Antwine*, 417 Mass. 637, 638-639 (1994) (if person already knows of police presence, knock and announce requirement is "useless gesture" excusing police from full compliance with rule).

the warrant to coincide with the presence of both suspects in the premises, presumably to ensure the search of their persons and their arrest if contraband was found during the search. The warrant was executed after dark, there was no lookout, and the suspects were not at the windows of the apartment. Every indication was that the officers would not be and were not observed approaching the building. In addition, the locked door on the first floor merely opened when pushed and did not present any obstacle or delay to entering the building, or provide any apparent notice to the suspects three floors above. In sum, when the police arrived at the threshold of the apartment to be searched, there was no basis to believe that the occupants might have notice of their presence and might therefore be destroying evidence. The most relevant concerns set forth in the affidavit, the likelihood of being observed approaching the building and the delay likely to be encountered in breaking through the locked door on the first floor, proved not to be present at the time of execution. These are precisely the type of circumstances that require a reappraisal of the legitimacy of a no-knock entry. On these facts, such entry was no longer warranted and was therefore unlawful.

The fact that an unlawful search has occurred does not automatically result in the exclusion of any illegally seized evidence. *Commonwealth* v. *Grimshaw*, 413 Mass. 73, 78 (1992), quoting *Commonwealth* v. *Gomes*, 408 Mass. 43, 46 (1990). The Commonwealth, however, has not pointed to any reason in its brief or argument why exclusion should not be the remedy in this case. The evidence seized in the apartment should have been suppressed. Because there could not have been a valid conviction without the impermissible evidence, the judgments are vacated, the verdicts set aside, and judgments shall enter for the defendant.

*So ordered.*

Sosman, J. (dissenting). In my view, the interests of officer safety justified dispensing with the requirement that the officers knock and announce their presence when executing this

particular search warrant. Legitimate safety concerns were adequately identified and supported in the search warrant affidavit, and reevaluation at the scene did nothing to ameliorate those safety concerns. Indeed, as the court acknowledges, *ante* at 220 n.5, the facts of this case fit squarely within our prior decision in *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 449-451 & n.2 (1993) (*Rodriguez*), in which we upheld a "no-knock" entry based on the affiant's prior experience finding weapons during drug searches, notwithstanding the complete absence of any specific information about the presence of firearms at the location to be searched. Nothing in the Supreme Court's decision in *Richards* v. *Wisconsin*, 520 U.S. 385 (1997) (*Richards*), suggests that *Rodriguez* was wrongly decided or wrongly analyzed. I would therefore affirm the motion judge's denial of the defendant's motion to suppress.

1. *Standard for issuance of warrant with no-knock provision.* At the outset, the puzzling history of this court's adoption of a "probable cause" standard for approval of no-knock provisions must be addressed. The use of that standard is at odds with the Supreme Court's "reasonable suspicion" standard, articulated in *Richards*, *supra* at 395, at odds with virtually every other jurisdiction that has considered the issue (see note 1, *infra*), and is particularly inappropriate when officer safety is implicated. This court's use of a "probable cause" standard for no-knock provisions has been perpetuated without ever articulating either why it was adopted in the first place or why it is more appropriate than "reasonable suspicion." Consistent with other areas of search and seizure jurisprudence that address issues of officer safety, and consistent with other jurisdictions, our jurisprudence on no-knock provisions should adopt a standard of "reasonable suspicion."

Our most comprehensive discussion of the common-law "knock and announce" rule is found in *Commonwealth* v. *Cundriff*, 382 Mass. 137, 140-147 (1980), cert. denied, 451 U.S. 973 (1981). There, we upheld an unannounced entry to execute an arrest warrant based on "a strong possibility that an announcement by the police of their identity and purpose would have endangered themselves or others." *Id.* at 147. The court did not articulate a particular standard to be applied to requests

to dispense with the knock and announce requirement, perhaps because it did not need to do so for purposes of the case as presented. The facts of the case — arrest of a suspect following an armed robbery involving multiple guns — would have warranted a no-knock entry on either a "probable cause" or a "reasonable suspicion" standard, and the case therefore presented no occasion to specify what standard was to be used when approving such an entry.

The reference to a "probable cause" standard for no-knock entries first surfaced in *Commonwealth* v. *Scalise*, 387 Mass. 413, 421 (1982) (*Scalise*). Without citation to any precedent, and without any analysis pertaining to selection of a standard for dispensing with the knock and announce requirement, the court simply announced that "[i]n order to obtain authority for an unannounced entry, the police must inform the issuing magistrate of the circumstances which give the police probable cause to believe that the evidence, i.e., the object of the search, will be destroyed." *Id.* The court then proceeded to opine, consistent with other jurisdictions, that the mere fact that drugs were the object of the search would not suffice for an automatic exception to the knock and announce rule. *Id.* However, the court concluded that the search warrant affidavit's recitation that the suspect was dealing significant quantities of marijuana and that he had moved to a different location in response to feared police surveillance was sufficient to support the inference that he was "ready to destroy the drugs" such that "the facts were sufficient to give rise to probable cause to believe that the evidence would be destroyed if the police knocked and announced their purpose before entering the apartment." *Id.* at 422-423. Thus, where the Commonwealth's showing had met the standard, whether formulated as "probable cause" or as "reasonable suspicion," there was no need to focus on what the standard should be. The adoption of a standard of "probable cause" occurred without any apparent consideration of whether that should in fact be the standard for a no-knock provision.

Citing *Scalise*, *supra* at 421, the court next repeated the standard as one of "probable cause" in *Commonwealth* v. *Gomes*, 408 Mass. 43, 45 (1990). In that case, the Commonwealth *conceded* that there was no basis for a no-knock entry, and was

merely arguing that either the doctrine of inevitable discovery or a good faith exception should "excuse[] what occurred." *Id.* at 44-45. Where the search warrant affidavit in that case literally contained "no information" concerning any justification for an unannounced entry, and the record was admittedly "devoid of any showing of special need to dispense with the requirement," the court was not called on to weigh whether the affidavit met any particular standard on that subject. *Id.* at 46. As such, the repetition of the "probable cause" standard as part of the background jurisprudence did nothing more than repeat dictum as part of more dictum.

The next repetition, similarly devoid of analytical substance or relevance to the contested issues in the case, came in *Rodriguez, supra* at 450. Again, the court merely cited *Scalise* for the proposition that "[a] no-knock entry is permitted where the police informed the magistrate of circumstances which provided probable cause to believe that the object of the search, the contraband, would be destroyed." *Id.* As in *Scalise*, the court held that the search warrant affidavit had satisfied that "probable cause" standard, making it unnecessary to consider whether that standard was inappropriately stringent. *Id.* at 451.

After this "probable cause" standard was enshrined as oft-repeated dictum in the above cases, the Supreme Court issued its decision in *Richards, supra*. There, the Court was confronted with a State court decision that had created a blanket rule excepting *all* drug searches from the knock and announce requirement. As part of its explanation as to why such a categorical exception was inappropriate, the Court articulated "reasonable suspicion" as the standard to be applied to requests for no-knock entries. "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard — as opposed to a probable-cause requirement — strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries." *Id.* at 394. By way of analogy,

the Court then cited to cases articulating the "reasonable suspicion" standard for similar search and seizure problems implicating officer safety. *Id.*, citing *Maryland* v. *Buie*, 494 U.S. 325, 337 (1990) (protective sweep of house during arrest), and *Terry* v. *Ohio*, 392 U.S. 1, 30 (1968) (pat-down search). The Court thus rejected the probable cause standard, expressly opting for the reasonable suspicion standard as one that both struck an "appropriate balance" and was consistent with related Fourth Amendment jurisprudence. The Court concluded with the observation that "[t]his showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id.* at 394-395. Applying that standard to the specific facts of the case at issue, the Court held that, notwithstanding the magistrate's refusal to authorize a no-knock entry, the circumstances confronting the officers at the time of the search gave rise to a "reasonable suspicion" that the occupant of the motel room would destroy evidence. *Id.* at 395-396.

Two years later, on appeal from an order suppressing evidence uncovered during a search following a no-knock entry, the Commonwealth asked this court to reconsider its adherence to the probable cause standard in this area. *Commonwealth* v. *Macias*, 429 Mass. 698, 701 (1999). The Commonwealth pointed the court to the Supreme Court's decision in *Richards*, noted that "the common-law knock and announce rule and its counterpart under the Fourth Amendment to the United States Constitution derive from the same source, English common law, and implicate the same concerns," and argued that the same standard should therefore be utilized. *Commonwealth* v. *Macias, supra.* The Commonwealth's argument was rebuffed in a single sentence, without discussion or explanation: "We see no reason, however, to depart from the rule we have previously followed." *Id.* This curt rejection of a soundly reasoned argument would be understandable if "the rule we ha[d] previously followed" had itself been adopted for some articulated reason. As outlined above, however, the probable cause standard had been adopted without articulating *any* reason, in a case for which the precise standard was of no consequence to the outcome, and had merely been repeated in other cases where the outcome was similarly unaffected by the choice of standard.

Normally, when this court decides that our common law, State statutes, or Constitution impose requirements different from those imposed by the Supreme Court under comparable Federal law, we take pains to explain the reasons for such differences. See, e.g., *Dahill* v. *Police Dep't of Boston*, 434 Mass. 233, 236-237, 242-243 (2001) (explaining why interpretation of "handicap" under G. L. c. 151B, § 1 [17], was contrary to Supreme Court's interpretation of "essentially identical" term in Americans with Disabilities Act); *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 660-669 (1999), *S.C.*, 432 Mass. 613 (2000) (explaining reasons for differentiating between Fourth Amendment requirements for exit order from vehicle articulated by Supreme Court and requirements under art. 14 of the Massachusetts Declaration of Rights); *Commonwealth* v. *Upton*, 394 Mass. 363, 371-377 (1985) (explaining our continued application of *Aguilar-Spinelli* analysis under art. 14 where Supreme Court had abandoned it for purposes of Fourth Amendment). As pointed out by the Commonwealth in *Commonwealth* v. *Macias, supra,* our common-law knock and announce requirement has the same origin as the Fourth Amendment's knock and announce requirement and serves identical purposes. Compare *Commonwealth* v. *Cundriff,* 382 Mass. 137, 140-146 (1980), with *Wilson* v. *Arkansas,* 514 U.S. 927, 931-936 (1995). To date, this court has articulated no reason for applying a standard for no-knock provisions that is higher than or different from the standard used for Federal constitutional purposes. I am persuaded that the Supreme Court's adoption of a "reasonable suspicion" standard is sound, and that standard has now been widely adopted in other jurisdictions.[1] This court's adherence to a standard of "probable cause" for purposes of an

---

[1]Virtually every court that has considered this issue subsequent to the Supreme Court's decision in *Richards* v. *Wisconsin,* 520 U.S. 385 (1997) (*Richards*), has adopted its standard of "reasonable suspicion." See *Ilo* v. *State,* 85 S.W.3d 542, 547 (Ark. 2002); *Cook* v. *State,* 255 Ga. App. 578, 579 (2002); *State* v. *Wakefield,* 267 Kan. 116, 130-131 (1999); *State* v. *Miskell,* 748 So. 2d 409, 413 (La. 1999); *Davis* v. *State,* 144 Md. App. 144, 152 (2002); *State* v. *Wasson,* 615 N.W.2d 316, 320-322 (Minn. 2000); *White* v. *State,* 746 So. 2d 953, 957 (Miss. Ct. App. 1999); *State* v. *Hamilton,* 8 S.W.3d 132, 136 (Mo. Ct. App. 1999); *People* v. *Skeete,* 257 A.D.2d 426 (N.Y. 1999); *State* v. *Mastracchio,* 721 A.2d 844, 846 (R.I. 1998); *State* v. *Henning,* 975 S.W.2d 290, 300 (Tenn. 1998); *Price* vs. *State,* No. 14-01-01028-CR (Tex. Ct.

exception to the knock and announce requirement stands as an anomaly in this country's jurisprudence on the subject. The one-sentence conclusion in *Commonwealth* v. *Macias, supra,* seeing "no reason" to depart from earlier dictum, does not strike me as an adequate basis for our utilizing a different standard.

Adherence to the probable cause standard, whatever its hidden merits might be with respect to concerns about destruction of evidence, is wholly inconsistent with our related jurisprudence concerning risks to officer safety. If reasonable suspicion as to the presence of such dangers is insufficient to dispense with the knock and announce requirement, that translates to the following unacceptable scenario: officers who have an objectively reasonable belief, based on specific and articulable facts, that knocking and announcing their presence will pose a danger to themselves (or others) will nevertheless be required to knock and announce and to endure the risk of injury (or even death) that they have objectively and reasonably predicted. Despite the

App. Sept. 12, 2002); *Henry* v. *Commonwealth,* 32 Va. App. 547, 552-553 (2000); *State* v. *Meyer,* 216 Wis. 2d 729, 749-750 (1998). See also *State* v. *Johnson,* 168 N.J. 608, 618-620 (2001) ("reasonable, particularized suspicion"). To date, there are only two exceptions: (1) The Supreme Court of North Dakota continued to adhere to a standard of "probable cause" because that standard was prescribed by the statute governing the issuance of search warrants, which precluded the court from adopting the "reasonable suspicion" standard articulated in *Richards,* see *State* v. *Hughes,* 589 N.W.2d 912, 914-915 (N.D.), cert. denied, 528 U.S. 846 (1999); and (2) the Court of Appeals of Arizona continued to utilize a standard of "substantial evidence" based on pre-*Richards* decisions from the Supreme Court of Arizona, see *State* v. *Cohen,* 191 Ariz. 471, 473 (Ct. App. 1998), citing *State* v. *Mendoza,* 104 Ariz. 395, 399-400 (1969), and *State* v. *Bates,* 120 Ariz. 561, 563 (1978). Even prior to *Richards,* many jurisdictions articulated the standard in terms of reasonableness, not "probable cause." See *People* v. *Condon,* 148 Ill. 2d 96, 105-106 (1992), cert. denied, 507 U.S. 948 (1993) (officers must have "reasonable apprehension of danger" or "particular reasons to reasonably believe evidence will be destroyed"); *State* v. *George,* 687 A.2d 958, 960 n.1 (Me. 1997) ("reasonable cause"); *State* v. *Pierson,* 238 Neb. 872, 877 (1991), quoting *People* v. *Rosales,* 68 Cal. 2d 299, 305 (1968) ("reasonable and good faith belief"); *State* v. *Attaway,* 117 N.M. 141, 151 (1994) ("objectively reasonable belief"); *State* v. *Arce,* 83 Or. App. 185, 188 (1986) (officers "reasonably believe" that there would be evidence destruction or risk of harm); *Lobatos* v. *State,* 875 P.2d 716, 722 (Wyo. 1994) ("reasonable cause"). See also *Parsley* v. *Superior Court,* 9 Cal. 3d 934, 938 (1973) (facts sufficient to support officer's "good faith belief"); *Dunfee* v. *State,* 346 A.2d 173, 176 (Del. 1975) ("good faith belief").

objective reasonableness of their concerns, officers will be forced to forgo precautions that they reasonably believe are necessary for their protection unless they can literally demonstrate "probable cause" for their concerns. We have never, in any other aspect of our search and seizure jurisprudence, required officers to run such risks to their safety, and we should not do so here.[2] "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. . . . [W]e cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." *Terry* v. *Ohio*, 392 U.S. 1, 23-24 (1968).

Rather, a standard of "reasonable suspicion" has uniformly been applied to search and seizure practices involving officer safety. As referenced by the Supreme Court in *Richards, supra* at 394, police executing an arrest warrant may conduct a sweep of the premises if they possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Maryland* v. *Buie*, 494 U.S. 325, 337 (1990). See *Commonwealth* v. *Bowden*, 379 Mass. 472, 478 (1980) (police arrested suspect in hallway of apartment; sweep search of basement justified where "a security check was reasonably believed necessary by the police to ensure their personal safety"); *Commonwealth* v. *Walker*, 370 Mass. 548, 556-557, cert. denied, 429 U.S. 943 (1976). Similarly, a pat-down frisk for weapons is justified when an officer "has reason to believe that he is dealing with an armed and dangerous individual," to be judged by "whether a reasonably prudent man in the circumstances would

---

[2] The court's announcement in *Commonwealth* v. *Macias*, 429 Mass. 698, 701 (1999), that it would adhere to a standard of probable cause for no-knock entries, was made in connection with the Commonwealth's claimed concern about potential destruction of evidence. In that case, the only claimed concern involving officer safety was premised on the assumption that an undercover officer would be in the apartment at the time the warrant was executed. *Id.* at 700, 703-704. Consideration of that alternative ground for a no-knock entry was obviated by the fact that the undercover officer was not in the apartment when the search actually took place. As such, this court has never confronted the anomaly of applying a probable cause standard to an unannounced entry when the justification advanced pertains to officer safety.

be warranted in the belief that his safety or that of others was in danger." *Terry* v. *Ohio*, *supra* at 27. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 (1991) (frisk justified where officer "reasonably believed that the defendant was armed and dangerous"). A search of an automobile for weapons is allowed "when, given other suspicious circumstances which justified a stop, an officer had no information whatsoever that a gun may have been in the vehicle, but still had reason to be concerned with his and others' safety." *Commonwealth* v. *Vazquez*, 426 Mass. 99, 103 (1997), citing *Commonwealth* v. *Santana*, 420 Mass. 205, 213 (1995), *Commonwealth* v. *Moses*, 408 Mass. 136, 141-142 (1990), and *Commonwealth* v. *Almeida*, 373 Mass. 266, 272 (1977). "[I]t does not take much for a police officer to establish a reasonable basis to justify an exit order or search based on safety concerns." *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 664 (1999). It is unprecedented for this court to hold that an officer's reasonable belief about the presence of weapons is insufficient justification for such intrusions on otherwise protected expectations of privacy. Consistent with this long-standing precedent imposing a standard of mere "reasonable suspicion" when the issue is one of safety, we should impose the same standard when the Commonwealth seeks to show that safety concerns justify dispensing with the knock and announce requirement.[3]

2. *The affidavit.* Applying what I believe to be the correct

[3]There is no reasoned distinction between the intrusion at issue in dispensing with the knock and announce requirement and the kinds of intrusions that have been justified by mere "reasonable suspicion." A protective sweep during an arrest involves a form of intrusion — e.g., police barging unannounced through closed doors to such private areas as bedrooms and bathrooms — that is virtually identical to an unannounced entry into the premises. As to the intrusion at issue during a patfrisk, the contact amounts to a nonconsensual touching of one's person, including one's private parts, that would, in any other context, constitute an indecent assault and battery. Moreover, it may be performed in a public place, adding to the humiliation inherent in such a search. See *Terry* v. *Ohio*, 392 U.S. 1, 17 (1968) (patfrisk "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment"). If these forms of intrusions are justified by "reasonable suspicion" of danger, police with a warrant to conduct a search of particular premises should be able to dispense with the requirement that they knock and announce if there is comparable "reasonable suspicion" of danger that would result from knocking and announcing. A higher standard cannot be justified by "the high degree of privacy that this court has histori-

standard to the search warrant affidavit in this case, I am satisfied that that affidavit supported a reasonable belief, based on specific and articulable facts, that the occupants of the apartment would likely be armed and that knocking and announcing the presence of police would unreasonably increase the danger to the officers executing the warrant. The affidavit first supported the officer's belief that the suspects were involved in large-scale distribution of both heroin and cocaine. One of the informants reported that the suspects dealt in "large amounts" of both drugs, and made "numerous" sales. The operation was one of long standing, as the informant's reports covered a period of "several months." The operation was also of some sophistication. Neither of the informants had any information as to where the drugs were presently kept — the dealers made no sales on site, kept the stash location secret from their customers, and moved their location after their vehicle had been stopped by police.[4] Thus, the affidavit supported the reasonable belief (and even established probable cause to believe) that the suspects were substantial, experienced dealers who kept a sizeable stash of two separate drugs, along with significant cash proceeds.

On the subject of weapons, the affidavit referenced the vice squad's experience with "this type" of search: "[M]embers of the vice squad commonly confiscated firearms in the service of search warrant[s] of this type." While that sentence was introduced with an insufficient generalization about the propensity of drug dealers to carry weapons ("it is common today for drug dealers to be in possession of firearm[s]"), the sentence concluded with a reference to the actual experience of *that* vice squad, in *that* city (Worcester), with warrants of *that*

cally held, in other contexts, can be expected in one's home." *Ante* at 216 n.3. By definition, the search warrant itself, which has been issued by a neutral magistrate on probable cause, entitles the officers to intrude on that "high degree of privacy." The knock and announce requirement does nothing to protect a privacy interest that will inescapably be infringed by the search itself.

[4]Police surveillance of the vehicle identified by one of the informants had traced the suspects to one address but, after the vehicle was stopped by another officer, the suspects moved from that address. Further surveillance identified the new location, that being the apartment identified in the search warrant.

type (i.e., involving significant drug operations).[5] With that information, a reasonably prudent person in the position of the officers executing the warrant would have objective reason to believe that these suspected dealers would similarly be armed.[6]

Indeed, despite espousing a standard of "probable cause" by which to assess the likelihood that occupants would be armed, this court previously held that an officer's prior experience finding weapons during drug searches, coupled with information that the drug dealer was dealing in significant quantities, sufficed to justify an unannounced entry to conduct a search. *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 450-451 (1993). If anything, the facts set forth in the search warrant affidavit in that case were sketchier than those set forth in the present affidavit. In *Rodriguez*, the affidavit recited an informant's report that the suspect had eight or nine ounces of cocaine for sale. *Id.* at 448. The informant had no information concerning firearms, and the affidavit contained no information specifically connecting the suspect with firearms. *Id.* at 449-450 & n.1. However, the officer's affidavit cited his own experience "that drug dealers often carry weapons to protect themselves from rip offs by other drug dealers, and that these weapons are usually handguns." *Id.* at 449 n.1. The affidavit also stated that the officer had been present "many times on past raids when our officers have recovered [s]uch handguns," and that he had been present when an officer "was shot with a handgun on a drug

---

[5]The officer's reference to what was "commonly" found during searches had not exaggerated some rare, infrequent occurrence into a "common" one. The court suggests, *ante* at 219 n.4, that, based on the figures identified later at the evidentiary hearing, this reference to what was "commonly" found would have been mathematically insufficient. Those figures — thirty to forty firearms found during each year's approximately 120 searches — represent a twenty-five to forty per cent chance that the occupants of the location being searched would be armed with a gun. A roughly one out of three likelihood that the police are dealing with an armed suspect would unquestionably justify a patfrisk, a protective sweep, an exit order, or a vehicle search. If "reasonable suspicion" were held to incorporate some numerical calculation of risk, these figures would qualify as sufficiently significant to give rise to a "reasonable suspicion" that the occupants would have a firearm.

[6]The search uncovered a nine millimeter pistol with thirty-seven rounds of ammunition. As such, this search added to the officers' understanding that firearms are "commonly" found during searches of major drug dealers in Worcester.

raid." *Id.* There was no specificity as to what was meant by "often," "usually" or "many times"; no reference to any particular characteristic of the other gun-toting dealers that could be viewed as comparable to some characteristic of the dealer at issue; and no reference to any similarity between the search that had resulted in a shooting and the anticipated search.[7] This court, in a unanimous opinion, concluded that the "sophistication on the part of the occupant" of the premises[8] and the officer's experience with handguns during drug-related searches "provided probable cause for the magistrate to conclude that the police need not announce themselves." *Id.* at 451.

In apparent recognition of the fact that *Rodriguez* would be dispositive of the present case, the court suggests in a footnote that *Rodriguez* is no longer good law in the wake of the Supreme Court's decision in *Richards*. *Ante* at 220 n.5. The reasoning, apparently, is that because *Richards* prohibited a blanket no-knock exception that would apply to all drug searches, references in affidavits to characteristics that would be common among many drug dealers, or even references to an officer's common experience with drug dealers, must be deemed insufficient lest they create the equivalent of a blanket exception. The logic is faulty, as is the interpretation of *Richards*.

In *Richards,* the Supreme Court of Wisconsin had ruled that, without needing to present *any* information concerning the proposed search, a mere showing of probable cause that drug dealing was involved meant that the officers " 'necessarily have reasonable cause to believe exigent circumstances exist' to justify a no-knock entry." *Richards* v. *Wisconsin,* 520 U.S. 385, 389 (1997). The Court rejected the use of such an automatic exception to the knock and announce requirement because,

---

[7]We should reject out of hand any suggestion that police must have actual knowledge of an officer's being shot by a drug dealer before they may have reasonable safety concerns when dealing with armed drug dealers. Again, we impose no such requirement on officers' conducting protective sweeps, pat-frisks, or vehicle searches based on fear of weapons.

[8]The conclusion that the dealer was sophisticated was premised on the fact that she dealt in "large quantities of cocaine" while "insulating herself from detection." *Commonwealth* v. *Rodriguez,* 415 Mass. 447, 451 (1993). The information concerning that dealer's "sophistication" was, if anything, less comprehensive than that presented here.

notwithstanding the fact that most drug searches did indeed involve risks of both evidence destruction and officer safety, it was still possible that particular circumstances might eliminate those risks. *Id.* at 393. As examples, the Court hypothesized a search being conducted at a time when only innocent persons, not the suspected drug dealers, were present, or a situation where the officers already knew that the drugs "were of a type or in a location that made them impossible to destroy quickly." *Id.*[9] The Court did not suggest that, absent some such countervailing considerations, an affidavit's recitation of the customary concerns surrounding drug investigations, which "frequently do[] pose special risks to officer safety and the preservation of evidence," would be insufficient for a no-knock entry. *Id.* Indeed, the Court recognized as "indisputable that felony drug investigations may frequently involve" both "a threat of physical violence" and "reason to believe that evidence would likely be destroyed." *Id.* at 391, quoting *Wilson* v. *Arkansas,* 514 U.S. 927, 936 (1995). Thus, where an affidavit recites facts that would support a reasonable suspicion as to either or both of those risks, the mere fact that those same facts are frequently encountered in drug investigations does not make them any less weighty. The point of *Richards* is that such facts cannot be automatically assumed for literally all drug searches, as particular circumstances may operate to *eliminate* the risks that would otherwise be likely in drug searches.[10]

Nothing in the current affidavit, or in the affidavit at issue in

[9]The latter situation was precisely what this court confronted in *Commonwealth* v. *Macias,* 429 Mass. 698, 702 (1999), where the police knew that the cocaine was individually packaged in many small bags and stored in multiple locations, such that rapid destruction of any significant amount of the cocaine was not feasible.

[10]This point was illustrated during the oral argument in *Richards,* where one of the Justices asked: "[I]f you have to justify the failure to knock and announce, you're going to be able to do it, I would assume, without too much trouble. In fact, I assume you could do it with virtually no trouble in most cases. There will occasionally be a rare case in which, for example, the informant has told you there are no guns, the marijuana is stored in bales out in the barn so that there's no risk of destruction, and in those rare cases you wouldn't be able to justify the failure to knock and announce, but in most of them you could. So are we talking really about the need for anything more than dispensing with what is probably in most cases almost a formality in the proof that you will adduce, the evidence that you will adduce at the suppres-

*Rodriguez, supra,* suggests any reason to believe that the risks ordinarily inherent in such searches had been eliminated or even reduced. Nor does the affidavit rely on facts that would be true of "all" drug investigations. Not every drug dealer deals in "large amounts." Not every drug dealer deals in both heroin and cocaine. And not every local police department has the experience of "commonly" finding weapons during drug searches in that particular city or town. An officer can reasonably believe (as turned out to be true here) that a large-scale, sophisticated dealer in both heroin and cocaine, who keeps his sizeable stash in a city where other drug dealers have "commonly" armed themselves, is also likely to be armed. Nothing in *Richards* suggests that there is anything unreasonable about such a belief, and nothing in *Richards* undermines this court's prior decision in *Rodriguez.* The concerns about weapons articulated here were at least as well founded as those articulated in *Rodriguez, supra,* and the result should be the same.

3. *Reevaluation at the scene.* I will accept, at least for purposes of argument, that the absence of any lookout and the unexpected ease with which the officers gained access to the building reduced the risk that any significant amount of drugs would be destroyed during the interval following a knock and announcement of police presence.[11] Those facts, however, did not diminish the risk that the occupants would be armed or

sion hearing? . . . [L]et's assume this Court says, 'Look, we are perfectly willing to recognize that in most cases involving drug dealers the State will in fact have valid grounds for dispensing with knock-and-announce, because the marijuana won't be in the barn and the informant will not have said, "These people are unarmed." ' So that we said, we recognize that in most cases they'll be able to make their proof without great difficulty, but we're not going to adopt a blanket rule for the simple reason that if we do we're going to be starting down the road to more blanket exceptions, and more blanket exceptions after that. So that in order to preserve the particularized inquiry value, which is a real value in the long run, we're still going to require the State in effect to make its proof knowing perfectly well the State can do it in most cases." Here, as in *Commonwealth* v. *Rodriguez, supra,* the informants did not provide the kind of "rare" information about the absence of weapons that would detract from the officers' otherwise reasonable suspicion about the likely presence of weapons in the apartment.

[11]I note, however, that in some respects our jurisprudence on the subject of evidence destruction has failed to account for the significance our statutes now place on the precise quantity of drugs possessed. Our statutes define differing levels of drug trafficking premised on the possession of quantities of drugs

Commonwealth *v.* Jimenez.

preclude the occupants from resorting to weapons. The officers' ability to reach the threshold of the apartment unnoticed meant that the occupants would have less time in which to retrieve (and perhaps load) any weapons they had, but the time period during which the officers would have to await a response to any knock and announcement prior to forcible entry would still be ample time in which to retrieve and ready a weapon.

As noted in *Rodriguez, supra* at 449 n.1, drug dealers carry weapons principally to protect themselves (and their valuable stash of drugs and drug proceeds) from robbery. It is reasonable to expect, in light of that purpose, that weapons at the stash site are kept loaded and near at hand. One would therefore expect that such a drug dealer occupant, once notified of the presence of police at the door, would be able to arm himself in a matter of a few seconds. Additional advance notice, by way of lookouts or by awareness of someone breaking into the building two floors below, would not be necessary. (Indeed, when the court justified a no-knock entry on grounds of likely presence of weapons in *Rodriguez, supra,* it did so despite the fact that, as here, the officers' presence would not have been known prior to

within specific weight ranges, with significant differences in minimum mandatory sentences triggered by each of those weight ranges. See G. L. c. 94C, § 32E. In any such trafficking case, the weight of the particular controlled substance is an element of the Commonwealth's case and must be proved beyond a reasonable doubt. Thus, while a dealer's destruction of only a small amount of a controlled substance would have little or no effect on the prosecution of a charge of possession with intent to distribute that controlled substance, destruction of even minute quantities can make it impossible for the Commonwealth to establish the requisite weight for purposes of a trafficking charge. For example, a person who possesses an amount just at or slightly above the threshold for a particular level of trafficking can, by the destruction of a single baggie, destroy evidence critical to that trafficking charge. Or, without literally destroying the drugs, one can rapidly take action making it impossible for the Commonwealth to obtain a reliable measure of their weight. For example, ripping open a large bag of powder cocaine and dumping it out a third-story window would not "destroy" it — it will all land outside on the ground below — but would make it impossible to retrieve all of it in a condition that would lead to a reliable measurement of its original weight. Where, as here, the search warrant affidavit indicates probable cause to believe that the dealer is dealing in quantities that would give rise to some level of trafficking charge, we are perhaps too cavalier in our assumption that the brief amount of time required to knock, announce, and await the occupant's response would not be sufficient time in which to effect significant destruction of evidence.

their actual arrival at the door. *Id.* at 451.) While the brief interval following a knock and announcement may be insufficient time to accomplish much in the way of evidence destruction (but see note 11, *supra*), it is quite sufficient for purposes of grabbing a gun that is, in all likelihood, loaded and close at hand.

Although this court has never addressed the issue of precisely how much time must elapse after a knock and announcement before police may proceed with a forcible entry, the time allotted must, in order to serve the purpose of the knock and announce requirement, be comparable to the time it would reasonably take an occupant to respond to the door. The purpose of the requirement is to give occupants "the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry." *Richards, supra* at 393 n.5, citing *Wilson* v. *Arkansas*, 514 U.S. 927, 930-932 (1995). See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 141 (1980). While the time reasonably necessary for an occupant to respond will vary with the circumstances (including the time of day, the size and layout of the premises, and the physical condition of the occupant), and courts have therefore been reluctant to set bright-line time requirements, most cases have required a minimum wait of ten to twenty seconds, a minimum that commentators view as "unduly lenient" on the police. See 2 W.R. LaFave, Search and Seizure § 4.8(c) (1996 & Supp. 2002), and cases cited. Ten to twenty seconds would provide ample time for an occupant to retrieve (and, if need be, even to load) a weapon, plus time to hide or otherwise place himself in an opportune location from which to fire. Where, as here, the police have reasonable suspicion that an occupant may be armed, the mere fact that the police have reached the threshold unnoticed does not diminish their need to dispense with the knock and announce requirement. Rather, where weapons are concerned, every fraction of a second counts, and reasonable suspicion of the presence of weapons would still justify a no-knock entry. I therefore respectfully dissent.